FOSTER C. GRIFFITH ET AL. v. CITY OF TRENTON.

ANNA MARY LEAVITT v. CITY OF TRENTON.

HOWARD IVINS v. CITY OF TRENTON.

SARAH GUNDLING v. CITY OF TRENTON.

Argued November 11, 1907—Decided February 24, 1908.

1. Chapter 269 of the laws of 1903, the title to which is "An act to authorize cities in this state to purchase lands and erect suitable buildings for city purposes and to sell lands and buildings now used for such purposes," does not authorize the condemnation of lands, for the reason that such object, although embraced in the body of such act, is not expressed in its title.
2. In whatever sense the title of an act would naturally and generally be taken is ordinarily the meaning that should in a constitutional sense be held to be expressed in it.
3. "To purchase" in the title of this act means "to buy," and hence does not *express* the right to condemn, although it is broad enough to *embrace* such right.

On *certiorari.*

Before Justices GARRISON and REED.

For the prosecutors, *Linton Satterthwait* and *Vroom, Dickinson & Scammell.*

For the city of Trenton, *Samuel D. Oliphant, Jr.,* and *Charles E. Bird.*

The opinion of the court was delivered by

GARRISON, J. Several writs of *certiorari* involving the same question were, by consent of counsel, argued together. The writs bring up the orders appointing commissioners to condemn the lands of the prosecutors.

The contention of the prosecutors is that the city of Trenton is not invested with the power to condemn their lands by force of a statute, the title of which is "An act to authorize cities of this state to purchase lands and erect suitable buildings for city purposes, and to sell lands and buildings now used for such purposes." *Pamph. L.* 1903, *p.* 736. The ground of this contention is that the exercise of the right of eminent domain is not expressed in this title as one of the objects embraced in the act.

The controverted question is whether the words "to purchase," in the title of this act, express, in a constitutional sense, that it is one of the objects of the act to authorize the taking of private lands by condemnation. On behalf of the city it is argued that "to purchase" is the equivalent of "to acquire;" that the term "purchase" is broad enough to include any method of acquiring real property by the act of the party as opposed to the act of law; that in legal terminology "purchase" means the acquisition of an estate in land otherwise than by inheritance, and that in literary usage it has a still wider employment, as examples of which the brief quotes the following somewhat archaic expressions of classic authors: "To purchase me another page," Ben Jonson; "Pillage got by purchase criminall," Spencer; "Purchase me another dry basting," Shakespeare.

Further definitions of "purchase" given in the brief of counsel for the city are "robbery" and "any mechanical power which increases the force applied," cited from Worcester's dictionary.

On the other hand, the landowners contend that "to purchase" means "to buy," and that this is its meaning in the title of this act.

Inasmuch as each of these contentions is founded upon fact, the question to be decided is, Which of these meanings would be naturally attributed to the words "to purchase" in the title of this act? Or, more broadly, the inquiry is, What information would legislators and the public generally derive therefrom as to the object of the act itself? For in whatever sense the title of an act would naturally and generally be

taken, that is ordinarily the meaning that it should, in a constitutional sense, be held to express.

"The criterion in these cases," said Chief Justice Beasley, in *Falkner* v. *Dorland,* 25 *Vroom* 409, "is to ascertain, as closely as practicable, what impression, as to the object of a statute, its titular expression is calculated to disseminate." "It is true," said the same learned jurist, in *Rader* v. *Union,* 10 *Id.* 509, 515, "that it may be difficult to indicate by a formula how specialized the title of a statute must be, but it is not difficult to conclude that it must mean something in the way of being a notice of what is doing. Unless it does this it can answer no useful end. It is not enough that it *embraces* the legislative purpose—it must *express* it." The italics are mine, but the emphasis is that of the writer of the earlier opinion, and is aimed at the mistaken conception that if the title of an act can be stretched to embrace a provision contained in its body such provision is expressed in such title. To miss the point of this emphasis, and therefore to confound what the title of an act expresses with what it embraces, is to nullify the mandate of the constitution in which this distinction is so sharply made: "Every law shall *embrace* but one object, and that shall be *expressed* in its title." *Const., art.* 4, § 7, *pl.* 4.

An object of an act is expressed in its title when a correct impression concerning the objects of the act is thereby disseminated. What impression will be disseminated by a given title depends very largely upon the minds addressed, and hence, as general legislation is addressed to the general public in the very largest sense, such impression will in general be derived by giving to familiar words in general use the sense in which they are commonly employed. This general rule of statutory interpretation applies nowhere with greater force than to the title of a legislative act which is in effect a constitutionally prescribed notice of the objects embraced in such act. Whatever variances may have arisen in the practical application of this doctrine, there is, I fancy, no difference of judicial opinion as to the soundness of the doctrine itself.

In the case of Van Riper *v.* Heppenheimer that came before Mr. Justice Dixon in the Orphans' Court of Passaic county,

and is reported in 17 *N. J. L. J.* 49, the correct rule was thus formulated: "The obvious purpose of this constitutional requirement (*Art.* 4, § 7, *pl.* 4) is to give information as to the object of the statute to the legislators and the public, and consequently the title should read as it would probably be understood by non-professional persons of ordinary intelligence."

Adopting the rule thus formulated as one that gives to the requirement of our constitution its true force and is in accord with our decisions, we have no difficulty in deciding that to the vast majority of persons, whether legislators or private citizens, the words "to purchase" are synonymous with "to buy," and hence that the information actually disseminated by the title now before us was that the object it expressed was to empower cities to buy land suitable for new buildings and to sell the land on which old buildings had stood. Not only is this the generally-accepted meaning of the words in their ordinary sense, but the very antithesis in which they stand in the context of the title lends itself to the same result. To purchase one thing and to sell another—*i. e.,* "to buy and to sell"—are terms so commonly coupled in current speech that not one person in a thousand, upon reading the title in question, would discover in its familiar terms any esoteric or recondite meaning. Indeed, the legislature recognized that purchase did not mean condemnation, for the language of the very section of the act upon which the city relies is in these words: "The said commission shall have the power to acquire, by *purchase or condemnation,* lands," &c.

We conclude, therefore, that the provision of the statute under review, with respect to the condemnation of land, although embraced in the body of the act, is an object that is not expressed in its title, and hence is a provision that has not constitutionally been enacted into a law.

The orders appointing commissioners to condemn the lands of the prosecutors brought up by their writs of *certiorari* are therefore set aside, with costs.

To avoid any misapprehension of our decision, it may be well to add that if a title to an act were to indicate that the legislature was dealing with the technique of estates in land,

or should otherwise fairly apprise the public that the object of the act was of a technical character, such considerations would be given their due weight, not in opposition to, but in accordance with the doctrine upon which the present case is decided.