THE MAYOR AND ALDERMEN OF JERSEY CITY AND H. OTTO WITTPENN v. WILLIAM H. SPEER, JUDGE OF THE HUDSON COUNTY CIRCUIT COURT, ET AL.

Argued November 10, 1908—Decided April 8, 1909.

1. The supplement of April 14th, 1891 (*Pamph. L., p.* 393), to the Martin act of 1886 re-enacts the provisions of said original act as of such later date; its effect therefore is to invest the commissioners appointed under such original act with jurisdiction to adjust arrearages of taxes existing at the date of such supplemental act as if such taxes had been so in arrears at the date of the original act; it does not purport to enact any radical departure from the provisions of the parent act or to engraft upon them any new provision, hence it does not invest the commissioners with a prospective jurisdiction to deal independently with future arrearages.

2. Where the provisions of a parent act map out a definite line of public conduct touching a given matter a supplemental act "extending" such provisions is fully satisfied if such provisions are carried forward intact to the date of such supplement; if the purpose be to engraft a radically new provision upon those of the original act some other word than "extended" must be employed.

On *certiorari.*

This writ, which is directed to the judge of the Circuit Court of Hudson county, brings up an order of said judge confirming report No. 113 of the commissioners of adjustment of Jersey City. The commissioners are those appointed under the Martin act of 1886, and the report in question covers unpaid taxes on specific lots of land aggregating, after adjustment, more than $500,000, as follows:

| | | |
|---|---:|---:|
| Point Breeze Ferry Co., from 1874 | $146,206 | 34 |
| Morris & Cummings Dredging Co., from 1883, | 17,066 | 97 |
| Daniel J. O'Leary, from 1883 | 108,239 | 20 |
| National Docks Railway Co., from 1891 | 59,485 | 93 |
| N. J. Warehouse and Guarantee Co., from 1892, | 147,662 | 11 |
| E. Caulfield, from 1893 | 3,896 | 94 |
| F. L. Livermore, from 1894 | 55,775 | 29 |
| Christian Kaiser, from 1894 | 2,112 | 82 |
| L. Lilliendohl, from 1898 | 4,941 | 77 |
| Total | $545,387 | 37 |

These adjustments were made under the authority of the Martin act and the supplement thereto passed on April 14th, 1891, entitled "A supplement to an act entitled 'An act concerning the settlement and collection of unpaid taxes, assessments and water rates or water rents in cities of this state, and imposing and levying a tax assessment and lien in lieu and instead of such arrearages, and to enforce the payment thereof, and to provide for the sale of lands subjected to future taxation and assessment,' approved March 30th, 1886, and the operation thereof." *Gen. Stat., p.* 3384.

The supplement reads as follows:

"Section 1. That the provisions of the act to which this act is a supplement be and the same are hereby extended to include all cases where any tax, assessment or water rate shall have been levied or imposed, or attempted to be levied or imposed on any land in any city of this state subsequent to the passage of the act to which this act is a supplement, and where such tax, assessment or water rate shall remain unpaid and in arrears for the period of one year.

"Section 2. That all acts and parts of acts inconsistent with the provisions of this act be and the same are hereby repealed."

This supplement the Circuit Court construed as investing the commissions with a prospective jurisdiction to adjust "future as well as the pre-existing arrearages."

The reasons filed by Jersey City and the other prosecutor of this writ attack this prospective jurisdiction of the commissioners upon three grounds, as follows:

*First.* Because the said adjustment commissioners had no authority or jurisdiction to adjust the taxes, water rents or assessments on any piece of property against which there are no municipal liens accrued prior to the year 1886.

*Second.* Because the act of 1891, purporting to extend the jurisdiction of the adjustment commissioners (being chapter 204), is unconstitutional in that it provides for matters not properly within the scope of the title of the act to which it is a supplement.

*Third.* Because if said act of 1891 is constitutional, then the adjustment commissioners had no authority to adjust, act

upon or consider taxes, assessments or water rents levied and imposed subsequent to the 14th day of April, A. D. 1891, on any piece of property against which there are no municipal liens accrued prior to that date.

Before Justices GARRISON, PARKER and VOORHEES.

For the prosecutors, *Warren Dixon* and *James J. Murphy.*

For the National Docks Railway Company and Lehigh Valley Railroad Company, *Collins & Corbin.*

For the Morris & Cummings Dredging Company, *McDermott & Enright.*

For the New Jersey Warehouse and Guarantee Company, *Vredenburgh, Wall & Carey.*

For Daniel J. O'Leary, *Merritt Lane.*

For the Point Breeze Ferry Company, *Mungo J. Currie.*

For E. Caulfield, *Clarence Kelsey.*

For H. T. Lilliendohl and Christian Kaiser, *Howard R. Cruse.*

The opinion of the court was delivered by

GARRISON, J.   There are two contentions as to the proper construction of the supplement to the Martin act, approved April 14th, 1891 (*Pamph. L., p.* 393), *i. e.,* two opposing views as to what was enacted by such supplement.   The first of these is that such supplement re-enacted the provisions of the parent act of 1886 as of April 14th, 1891, and hence operated at such later date as did the original act, only where arrearages had accrued prior to the date of its approval.   This is the contention of Jersey City and the other prosecutor.

The other contention is that said supplement enacted a new provision not in the original act by which the commissioners appointed under the original act were invested with a prospective jurisdiction to deal independently with future arrearages of taxes, *i. e.,* to adjust taxes levied after the approval of such supplement even though no arrearages of taxes existed at the date of the approval of such supplemental act. This is the contention of the defendants and was the conclusion reached by the judge of the Circuit Court.

As between these two contentions our conclusion is with the prosecutors, viz., that the effect of the supplement of 1891 is to re-enact the provisions of the original Martin act of 1886 as of such later date, and that it does not enact a new provision, not in the original act, by which the commissioners are invested with prospective jurisdiction to adjust future arrearages of taxes where none existed at the date of the approval of the supplemental act.

I. That this is the proper construction of this supplement appears, we think, from the language of the supplement itself, whose enacting clause is that "the provisions" of the original act shall be "extended" to cases where taxes shall have been levied subsequent to the passage of such original act. That such original act did not apply in the case of future arrearages where none existed prior to the passage of such act is an admitted fact, and was judicially declared in the case *In re Commissioners of Elizabeth,* 20 *Vroom* 488.

A fundamental provision therefore of the original Martin act was that its provisions as to the adjustment of arrearages of taxes should have no operation excepting where arrearages existed at the time of its passage.

This being so as to the provisions of the original act touching the adjustment of arrearages of taxes, and the sole expression of the legislative will contained in the supplemental act of 1891 being that the provisions of the original act should be extended to taxes levied subsequently to the passage of such original act, it follows that one of the provisions of the original act so extended was that which confined the adjustment of arrearages of taxes to cases in which arrearages ex-

isted at the date of the approval of the act under which their adjustment was provided. The natural construction, therefore, of the supplement of 1891 is that it extends the provisions of the original act to arrearages existing at the date of such extending act with the same force.and incidents that such provisions had under the original act. In fine the supplement of 1891 re-enacts the provisions of the statute of 1886 as of such later date, but adds no radically new provision thereto. If, instead of the re-enactment of the provisions of the Martin act as of a later date, it had been the legislative intention to add thereto a new and distinct feature that constituted a radical departure from such original legislation, it would not in the enactment of such new provision have employed the language "the provisions of the (original) act are hereby extended." Not only is there in this language no suggestion of the enactment of a novel provision, but the word "extended" negatives such a purpose. "Extended," as applied to a group of provisions that go to make up a line of public conduct, means just what it does when applied to a line in mathematics, viz., the carrying onward of such line, not the drawing of some different line or the addition of other lines. A radical departure from a prescribed line of procedure is not even suggested, much less enacted, by legislative words that import nothing more than that such prescribed line shall be extended to a later period of time.

The case of *Middlesex and Somerset Traction Co.* v. *Metlar,* 41 *Vroom* 98, is instructive in this connection. The statute there construed authorized the "extension" of, the line of an existing railway. In the Supreme Court it was held that extension might include the addition to the plant of a railway of new tracks parallel with the existing rails, but the Court of Errors and Appeals (43 *Id.* 524) repudiated this meaning of "extension" upon grounds that are equally pertinent to the meaning of the same word in the context in which it is now before us. We conclude, therefore, that where the provisions of the parent act map out a definite line of public conduct touching a given matter a supplement extending such provisions is fully satisfied if such provisions are carried for-

ward intact, and that if the purpose be to depart from such provisions by the addition of a radically new provision some other word than "extend" must be employed to effectuate such purpose.

The use of the future perfect tense in the supplement of 1891 in the expression "shall have been levied" has no decisive force as between the two opposing constructions of this act. This verbal form places its subject subsequent to some definite point in time and anterior to some later point; hence it lends itself equally to that construction that would make the act apply to taxes that shall have been levied after the approval of the original act and before their adjustment, and to that construction that limits the act to taxes that shall have been levied subsequent to the original act (which is the date fixed in the supplement itself) and prior to the date of the approval of such supplement.

Our conclusion therefore from the language alone of the supplement of 1891 is that the sole purpose it expressed was to re-enact as of such later date the provisions of the parent Martin act, and that the enactment of a new provision that clothes the Martin act commissioners with prospective jurisdiction.for the independent adjustment of arrearages of taxes not levied at the time such supplement was passed, finds no expression therein.

If, however, we are mistaken as to the construction of the language of this supplement, and if it be conceded that such language admits also of the other construction sought to be placed upon it, then we must look at the effect of such other construction upon the public matters with which the legislation deals, not for the purpose of passing upon the merits or demerits of such resulting legislation, but in order to determine whether or not it is probable that legislation having such results was within the contemplation of the lawmaker.

In this connection the first consideration that presents itself is that, if the adjustment of future arrearages was contemplated and provided for by the supplement of 1891, such provisions were intended to apply to all taxpayers alike, so that if the new scheme thus set on foot were generally availed of

the payment of taxes at the time fixed by the general tax laws or at any other fixed time would be a thing of the past, so that the entire fiscal resources of the city would be made to depend upon a procedure in which both the amount of taxes receivable and the date of their possible collection would be wholly indeterminate. That this is no fanciful picture is shown by the report that was confirmed by the order now before us in which the interval between the time fixed by the tax laws for the payment of the taxes in question and the date of their adjustment is in some cases as much as thirty-three years and in most of the cases no taxes were paid for) more than sixteen years. How a city could be run in the event of a general adoption of such a system of non-payment of taxes is perhaps a question with which we need not concern ourselves, but such question must concern us when we are asked to say, in the face of a contrary construction, that this was the system the legislature intended to inaugurate. That the effect of such a system is to put a premium upon the non-payment of taxes is perfectly apparent. The case, it is true, does not expressly show that the taxes as adjusted are less than the taxes levied or reduced by the ordinary methods of appeal, but a mere glance at the list of those who by the non-payment of taxes have availed themselves of their adjustment instead, forbids us to ascribe their adoption of this course either to impecuniosity or to ignorance or to lack of due appreciation of the relative advantages of the two systems. We are forced, therefore, to put to ourselves the following pertinent inquiries:

Is it likely that the legislature intended to establish *pari passu* with its general tax laws a system that in effect nullified such laws by putting a premium upon their non-observance?

Is not such system so inconsistent with the otherwise uniform policy of the legislature in the enactment of tax laws as to forbid our adoption of such a construction unless plainly driven to it?

If the legislature intended to invest the Martin act commissioners with such plenary and prospective jurisdiction to review and adjust taxes, was not all of the concurrent and

intervening legislation for the establishment of multiple and expensive tribunals for the review of taxes, such as the county boards of taxation and the state board of equalization, from which cities that had adopted the Martin act were not excepted, fatuous in the extreme?

If the Martin act at the time of its adoption by Jersey City and other cities had in it a limitation that expressly negatived such prospective jurisdiction over future taxation, is it to be lightly presumed that the legislature intended to inject into the procedure thus already adopted a provision that, had it been in the original act, might well have deterred such cities from its adoption?

The case of *In re Commissioners of Elizabeth,* 20 *Vroom* 488, not only declared that the Martin act had operation only where there were prior arrearages, but also stated that such scope of the act was apparent from its title. This case was decided in 1887 and the comprehensive opinion of Mr. Justice Depue was at once recognized as authoritative upon the matters that it covered. In view of the judicial declarations of this opinion is it probable that in 1891 the legislature intended to give to the supplemental act of that year a force and effect that Justice Depue four years before had said was not within the scope of its title?

In the opinion referred to the Martin act was also characterized as an exhibition of "the power of the legislature to correct by *retroactive* legislation errors and defects in the levying of taxes." In view of this judicial declaration are we likely to assume that the supplement of 1891 inaugurated a system of prospective legislation? Prospective legislation of such a character, *i. e.,* the condonation of defaults before they have occurred, is indeed a novelty in legislation.

When these and other like considerations are placed side by side with the other construction by which the original legislation that had been found to be salutary, sane and satisfactory was extended to cover a specific interval of time, we cannot but adopt such latter construction, not only because the language of the act requires such construction to be given to it,

but also because, if either construction be possible, the latter alone, in view of the foregoing considerations, is permissible.

This conclusion is further supported by the supplements of April 5th, 1892 (*Pamph. L., p.* 395), and June 2d, 1905 (*Pamph. L., p.* 497), in each of which taxes levied and in arrears for the space of two years are subject to collection in cities that have adopted the Martin act without a suggestion of their adjustment by the commissioners. Whether or not the effect of these supplements was to limit the "subsequent taxes" that under section 2 of the original act might be included in the adjustment of a prior arrearage need not now be considered since the question is not raised by any of the reasons filed by the present prosecutors. It may well be, however, that the legislature deemed that two years was a sufficient time in which by the exercise of reasonable diligence an existing arrearage might be adjusted, and hence intended after the expiration of such period to render current taxes collectible without adjustment. In view of an actual instance in which more than twenty years was required to adjust an arrearage of less than $1,000 whereby such existing arrearage drew to it current taxes amounting to $145,516.34, such a provision cannot be said to be either unreasonable or uncalled for.

II. If, however, we are in error as to the construction of the supplement of 1891, and if such act provides for the adjustment of future arrearages of taxes where none existed at the date of its approval, then we are of the opinion expressed by Mr. Justice Depue in the case last cited, viz., that such object is not expressed in the title of the act to which such act of 1891 is supplemental.

We do not say and we do not have to say that such object may not be embraced by the language of such title. That is not a constitutional question. The constitutional requirement as to what shall be embraced in an act has no application to its title but only to its enacting clauses. The requirement as to its title is that the object of every act shall be "expressed" therein, which is a very different matter from its being "embraced" thereby, as has been frequently pointed out in our cases.

"It is not enough," said Chief Justice Beasley in *Rader* v. *Union*, 10 *Vroom* 509, "that it (a title) embraces the legislative purpose. It must express it." "To confound what the title of an act expresses with what it embraces is to nullify the mandate of the constitution." *Griffith* v. *Trenton*, 47 *Id.* 23.

"It has been thoroughly settled," said Chancellor Magie in *State* v. *Twining*, 44 *Vroom* 683, "by repeated decisions of our courts, including the court of last resort, that to accord with this constitutional provision the title of every act must not only include, but must also express, its object."

Bearing this practical distinction in mind, it is evident that the title of the original Martin act expresses its object as falling under two distinct heads, one relating, as Justice Depue has said, to certain conditions existing anterior to the passage of the act which are therefore properly termed "arrearages," and the other relating to certain future contingencies which are enumerated. Arrearages and their adjustment admittedly come wholly under the first head mentioned in the title, and as to them no notion of futurity is suggested by the title, still less is expressed therein. Indeed the very term "arrearage," signifying as it does something that is to the rear of, *i. e.*, behind one, is so inept a term by which to express something that is ahead of one that its employment in such a sense savors rather of an intentional perversity of language than of the intelligent compliance by a legislative body with a requirement of the constitution.

We think it clear that the object of the supplement of 1891, if construed as the Circuit Court construed it, is not expressed in the title of the original act of 1886. Hence if such construction be given to it the supplement itself is an unconstitutional enactment, which is but another way of saying that such construction should not, if possible, be given to it.

The result we reach is that under the proper construction of the supplement of 1891 the Circuit Court erred in confirming the adjustments reported by the commissioners in the cases of National Docks Railway Company, New Jersey Warehouse and Guarantee Company, E. Caulfield, F. L. Liver-

more, Christian Kaiser and L. Lilliendohl, for the reason that in these cases there were no arrearages of taxes prior to the approval of such supplement.

In the remaining cases included in report No. 113, arrearages appear to have existed prior to the date of such supplement, indeed prior to the approval of the original act of 1886, hence these adjustments are not challenged by any of the reasons filed by the prosecutors and are therefore unaffected by our present adjudication.

The order brought up by this writ of *certiorari* being erroneous in the respects indicated, is reversed and set aside to the end that a new order may be made by the judge of the Circuit Court.