FRANK FULLER ET AL., PROSECUTORS, v. BOARD OF EDUCATION OF THE BOROUGH OF CHATHAM ET AL.

Submitted March 19, 1909—Decided June 22, 1909.

A vote of the majority of legal voters in a school district in accordance with subdivision 4 of section 86 of the School act of 1903 (*Pamph. L.* 1904, *p.* 32) authorizing the board of education to purchase school grounds, does not empower the board of education to condemn grounds for school purposes.

This writ brings up an order of the Supreme Court appointing commissioners to condemn lands belonging to the

prosecutor and others, in the borough of Chatham, for school purposes, on the petition of the board of education of the borough.

Before Justices REED, TRENCHARD and MINTURN.

For the prosecutor, *Edward K. Mills.*

For the board of education, *Lawrence Day* and *Willard W. Cutler.*

*Pro se, Elias B. Mott.*

The opinion of the court was delivered by

REED, J. On May 8th, 1908, the board of education of the borough of Chatham passed a resolution reciting that the school accommodations provided in that borough were inadequate, and that a plot of ground should be secured and a schoolhouse should be erected, and resolving that a meeting of the local voters of the school district of the borough of Chatham should be held on May 23d, 1908, and that a notice of such meeting should be posted in certain public places. It was resolved that there should be stated in said notices that the following items of business would be acted upon at said meeting: To authorize the board of education to purchase as a lot on which to erect a schoolhouse a plot of land particularly described in said notice, the cost of said plot not to exceed $7,000; to authorize the board of education to erect a schoolhouse on said plot of land and to furnish school furniture for said house.

An election was held according to the notice, and the voters adopted a resolution to purchase the said plot at a cost not to exceed $7,000.

At an adjourned meeting of the board of education held on May 26th, 1908, a resolution was adopted to purchase the land in question, at a cost not to exceed the sum of $7,000. Then followed reports to a subsequent meeting of the board, of

negotiations for the purchase of the lot, which negotiations turned out to be fruitless; and finally, at a regular meeting held September 29th, 1908, counsel for the board reported that he had filed a petition for condemnation of the said plot of land, and reported at the meeting held November 24th that the commissioners appointed to condemn had awarded $7,000 for the land and $500 damages to the remaining land of the landowners.

At a special meeting held December 1st, 1908, it was reported that $500 had been raised by subscription, and it was ordered that a warrant should be drawn for the $7,000 and another for the $500.

No appeal from the award of the commissioners was taken by anyone within the time limited by the statute.

The prosecutor now challenges the power of the board of education to condemn this land.

The power to provide land for school purposes is conferred by section 86 of the act to establish a system of public schools, which act was approved October 19th, 1903, and published with the laws of 1904. *Pamph. L., p.* 32.

Subdivision 4 of section 86 of this act authorizes the board of education to purchase, sell and improve school grounds * * * provided that for such act it shall have the previous authority of the vote of the legal voters of the district. Subdivision 5 of this act authorizes the board to take and condemn lands and other property for school purposes in the manner provided by law regulating the ascertainment and payment of compensation for the property condemned and taken for public use. If either party shall feel aggrieved by any proceeding and award thereunder, said party may appeal in the manner provided by law for appeals from such proceedings and award; provided that before beginning any proceedings for taking and condemning land and other property, the board of education shall have the authority of the vote of the legal voters of the district.

It is to be observed that the power to purchase school grounds, and the power to take and condemn lands for school

purposes, are treated as distinct powers. The exertion of each power must have the approval of the majority of the voters of the school district.

The approval of the voters of the school district in this instance was to purchase and not to condemn the plot of land indicated in the notices.

Now, the power to purchase does not include the power to condemn. This not only appears from the separation of the two powers in the statute itself, but it was so held in the case of *Griffith* v. *Trenton, 47 Vroom 23*, where the statute gave the right to municipalities to purchase land for municipal purposes. It was ruled that under this delegation of power land could not be taken by condemnation.

It is argued by the counsel for the board of education that unless the delegation of power to purchase by the public vote carries with it the power to condemn, there must be two submissions to the public vote before condemnation can be effected—first a submission for the power to purchase, and then a submission for the power to condemn.

If the power to purchase is included in the power to condemn, this position is not sound; but whether it is or not, there is no difficulty in combining in one submission the question of power to purchase coupled with a condition that upon failure to agree with the landowners, there may be condemnation of the designated land.

It is to be observed, however, that the limitation of the price to be expended to $7,000 did not prevent the taking of the land merely because someone else was willing to increase the compensation to the landowners to $500 more.

The proceedings must be set aside.