# Richmond

CAVALIER VENDING CORPORATION AND ERIC REISFELD V.
THE STATE BOARD OF PHARMACY, ET AL.

January 25, 1954.

Record No. 4151.

Present, All the Justices.

The opinion states the case.

*Kellam & Kellam, Robert Lewis Young* and *Bremner & Young,* for the appellants.

*J. Lindsay Almond, Jr., Attorney General* and *Frederick T. Gray, Assistant Attorney General,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

Cavalier Vending Corporation sought and obtained a temporary injunction against the State Board of Pharmacy, restraining the Board from enforcing the provisions of Chapter 298, Acts of Assembly, 1952 (Code, § 18-89.1). After a hearing the court dissolved the injunction and dismissed the bill. The prayer of the bill having been for relief of "all others engaged in like or similar business", Eric Reisfeld alleged that he was aggrieved by the decree dismissing the suit and therefore joined appellant, Cavalier Vending Corporation, in this appeal.

The bill prayed that the State Board be enjoined from enforcing the provisions of the Act upon the ground that it is in contravention of the equal protection clauses of the Constitutions of Virginia and the United States, and violates the prohibition against granting special privileges contained in the former, as well as the requirement that the object of an enactment be expressed in its title.

The Act under consideration reads:

## "Chapter 298

"An Act to restrict the sale of certain commodities; to require certain permits and prescribe the fees therefor; to confer the rule making power upon the State Board of Pharmacy, and to impose upon it certain duties; to prohibit certain acts, provide penalties for violations and provide for the destruction of certain property; and to provide for the disposition of certain funds.

"Approved March 11, 1952

"Be it enacted by the General Assembly of Virginia:

"1. § 1. No drug, medicinal preparation, appliance, device or other article intended or having special utility for the prevention of venereal disease, hereinafter referred to as device, shall be sold or otherwise disposed of in this State except by duly licensed practitioners of medicine; and in pharmacies and retail outlets. Pharmacies and retail stores desiring to sell such devices shall apply in writing to the State Board of Pharmacy and the Board shall issue a permit for the sale thereof. Such devices may be sold by wholesalers regularly transacting business as such, but it shall be unlawful for any wholesaler to knowingly sell such devices to any unlicensed retailer.

"§ 2. The offering for sale, distribution or other disposition by means of a vending machine or other automatic machine of such devices is expressly prohibited.

"§ 3. Any such vending machine or other automatic machine shall be destroyed when found in violation hereof. Possession of such devices by any unlicensed retailer in his place of business shall be *prima facie* evidence of sale.

"§ 4. The State Board of Pharmacy shall enforce the terms of this Act and may establish minimum standards of quality for such devices which standards of quality shall be such as will tend to reduce the likelihood of contracting a venereal disease.

"§ 5. Any person who violates any of the provisions of this Act or regulation of the Board shall be guilty of a misdemeanor."

While the issues here involved are legal and not factual, two witnesses were introduced by the State Board for the purpose of showing that the Act would promote the health and morals of the community, and for the further purpose of demonstrating the method used in operating the vending machines, the use of which is sought to be prohibited.

R. R. Rooke testified that he had been a pharmacist since 1921; that he was a member of the Board of Health of the City of Richmond; that he had served as President of the Virginia Pharmaceutical Association; that as such he visited practically every drug store in Virginia; that so far as he knew the universal practice in retail outlets in regard to prophylactic rubber goods was that such goods were kept in a drawer out of sight, and sold only upon request; that he had never seen any display or advertisement of such goods except in professional journals; that sales are made in a discreet manner, male customers being served by male clerks; that the cartons containing the devices are dated so that the oldest may be first sold to assure fresh merchandise; that he had seen vending machines used in the sale of the devices in Richmond and in service stations on the highways, said machines being located in both men's and women's rest rooms. J. Curtis Nottingham, Secretary of the Virginia Pharmaceutical Association, corroborated Mr. Rooke in his testimony, and in addition stated that indented in the metal on the vending machines were the words "Sold for Prevention of Disease Only", and stencilled on the machines were the words "Latex" and "Silver-Tex".

■ The assignments of error relied upon raise the constitutional questions previously stated and will be considered generally in the order listed. In the main they are presented by appellants in the form of two questions, the first being:

"(A) In view of the provisions of Section 52 of the Constitution of Virginia, can an act of the Legislature having a title so vague as to give no notice whatsoever of its contents be valid?"

The relevant part of Section 52 of the Constitution of Virginia reads: "No law shall embrace more than one object which shall be expressed in its title; * * * ". The objection presented here is that the title to the Act under review is vague and its object is not "expressed in its title". The point so raised has been presented to this court on many occasions. See annotations to Section 52 of the

Constitution of Virginia, Vol. 9, Code, 1950, pp. 462-464.

Conceding that the title to the Act is subject to criticism, it is not so defective as to render the enactment void. We have repeatedly held that the purpose of the constitutional provision (§ 52) was to prevent the members of the legislature and the people from being misled. The primary purpose of the section was to prevent the employment of deceptive titles which would conceal rather than reveal the character of the legislation, and to prohibit the bringing together into one bill subjects diverse and dissimilar in nature and having no kindred connection; to prevent surprise or fraud in legislation by inserting provisions in the act of which the title gives no intimation. It was not the intention of the section to obstruct honest legislation and it was not designed to embarrass legislation by requiring that the caption of an act state its full purpose as completely as the act itself. *Commonwealth* v. *Brown*, 91 Va. 762, 771, 21 S. E. 357, 360, 28 L. R. A. 110; *Dickens* v. *Radford-Willis, etc. R. Co.*, 121 Va. 353, 357, 93 S. E. 625.

Where there is doubt as to the sufficiency of a statutory title, to meet the requirement of Section 52, such doubt must be resolved in favor of its sufficiency, as courts will not declare an act of the legislature unconstitutional unless its unconstitutionality is plain. *Commonwealth* v. *C. & O. R. Co.*, 118 Va. 261, 268, 87 S. E. 622; *Commonwealth* v. *Dodson*, 176 Va. 281, 11 S. E. (2d) 120.

The title to Chapter 298 gave notice that the Act restricted "the sale of certain commodities"; required "certain permits" and prescribed "fees therefor"; conferred "rule making power upon the State Board of Pharmacy", and imposed upon the Board "certain duties"; prohibited certain acts and provided penalties for violation; and that it provided for the destruction of certain property and for the disposition of certain funds.

While the title is general, it is evident that the Act relates to the regulation of the sale of certain commodities. We said in *Powell* v. *Supervisors of Brunswick County*, 88

Va. 707, 714, 14 S. E. 543, "The generality of a title is no objection to it, so long as it is not made a cover for legislation incongruous in itself, and which, by no fair intendment, can be considered as having a necessary or proper connection." And we held in *Fidelity Insurance Co.* v. *S. V. R. Co.*, 86 Va. 1, 6, 9 S. E. 759, "When the title is general, as it may be, all persons interested are put upon inquiry as to anything in the body of the Act which is germane to the subject expressed."

We hold therefore that the subjects embraced in the statute which are not specified in the title are congruous to and have a natural connection with the subject expressed in the title, thus making the title to the Act free from the fault asserted.

█ The next question presented under the assignments of error is:

"(B) In view of the equal protection clause of the Federal Constitution and that of the Virginia Constitution, as well as the prohibition in the Virginia Constitution against granting special privileges, may the Legislature of Virginia require a privilege license for a trade, which neither historically nor by statute is other than the sale of an ordinary commodity which may be engaged in as of common right and then declare, not in the exercise of the police power in furtherance of some fixed policy of the State, that one class of person shall be ineligible to procure such license?"

Appellants argue that the Act is in violation of the declared public policy of Virginia to prevent the spread of venereal disease and that it denies them the right to engage in a lawful business in furtherance of this declared public policy while granting such privilege to others. They concede that this argument is unavailing if the Act is passed pursuant to a valid exercise of the police power of the Commonwealth. *Miller* v. *State Entomologist*, 146 Va. 175, 135 S. E. 813; affirmed in *Miller* v. *Schoene*, 48 S. Ct. 246, 276 U. S. 272, 72 L. ed. 568. Appellants contend that the

passage of the Act was not a valid exercise of the police power of the State. We now give this contention consideration.

It is said in 11 Am. Jur., Constitutional Law, § 245, pp. 966, 967, 968, 969: "The police power is an attribute * * * of every civilized government. * * * Consequently it is inherent in the States of the American Union, possessed by every one of them as sovereign, and is not a grant derived from or under any written constitution. * * * (P)olice power is a grant from the people to their governmental agents. * * * "

It is well settled by many decisions dealing with widely varied subjects that the police power extends to the enactment of laws which promote the public welfare, health and morals of the citizens. *West Coast Hotel Co. v. Parrish,* 300 U. S. 379, 81 L. ed. 703, 57 S. Ct. 578, 108 A. L. R. 1330. The police power is not susceptible of circumstantial precision because it is impossible to foresee changing conditions which may call for its exercise. *Des Moines v. Manhattan Oil Co.,* 193 Iowa 1096, 184 N. W. 823, 23 A. L. R. 1322.

Clearly, commodities of such a nature as tend to engender vice, indecency and social corruption are within regulatory scope of the police power. Such are not "ordinary commodities" as contended by appellants. (See Annotation, L. R. A. 1917B, 1078) Acts passed for the purpose of attempting to secure public order, decency, and morals are not violative of the rights of persons and property contained in the Federal and State constitutions. *L'Hote v. New Orleans,* 177 U. S. 587, 44 L. ed. 899, 20 S. Ct. 788.

When the Act here under consideration is examined in the light of reason we cannot say that it exceeds the constitutional authority vested in the legislature. It is a valid exercise of the police power of the Commonwealth and is in furtherance of the health and morals of the people. Where these devices are sold only by licensed retail out-

lets, as permitted by the Act, improper use will be discouraged. It may be reasonably assumed that the sale of such devices through vending machines placed in public rest rooms frequented by people of all ages might prove detrimental to morals, particularly of young people. It unnecessarily places before them a temptation fraught with great danger. Young people may be tempted to buy from this "silent salesman" for immoral purposes, whereas they would not make such purchase from a clerk in a licensed retail outlet. Further, the vulgar display of these machines filled with their wares clearly has a tendency to shock the sensibilities of decent people who, of necessity, at times use public rest rooms.

One does not have to inquire as to the motives for this legislation. The reasons for its passage are obscure only to those who do not care to see.

But it will be observed that the Act does not prohibit the sale of the devices. All licensed pharmacies and retail stores can sell them. Thus appellants' argument that the legislation "is simply an Act to stifle competition" is untenable. The State is not attempting to prohibit the sale of these devices; it is simply exercising its constitutional right to regulate their sale.

It is argued by appellants that the Act is not constitutional because it imposes restrictions on a lawful business which do not operate equally upon all persons pursuing the same business under the same circumstances. The business here sought to be regulated, as heretofore stated, directly affects public morals and health and is therefore subject to strict surveillance. Appellants have failed to show that the regulations imposed discriminate against them. There is nothing in the statute which prevents appellants from selling the devices. They are at liberty to comply with the regulatory terms of the Act and sell them. They are simply prohibited, like all other persons, from selling them through vending machines. Thus there is no denial of the equal protection of the law.

"The Fourteenth Amendment to the Constitution of the United States does not prohibit legislation which is limited either in the objects to which it is directed, or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed." *Hayes* v. *Missouri*, 120 U. S. 68, 7 S. Ct. 350, 30 L. ed. 578; *Buck* v. *Bell*, 143 Va. 310, 321, 130 S. E. 516, 47 S. Ct. 584, 274 U. S. 200, 71 L. ed. 1000. Since Chapter 298 meets this test, we are of the opinion that the classification which it establishes is not arbitrary. It is based on reasoning which we have no right to challenge. Unless the classification in the Act is arbitrary and unreasonable it cannot be successfully attacked. *V. E. & P. Co.* v. *Commonwealth*, 169 Va. 688, 194 S. E. 775.

For the reasons here expressed the decree appealed from is

*Affirmed.*

HUDGINS, C.J., SPRATLEY and MILLER, JJ., dissenting.

MILLER, J., dissenting.

The object of Chapter 298, Acts of 1952, page 389, is to restrict and regulate disposition of drugs, preparations or articles intended to prevent venereal disease or conception. By forbidding their sale in vending machines, the act prevents such clandestine and easy acquisition as might tend to encourage their promiscuous use. Thus the underlying and dominant purpose behind the legislation is to protect public health and morals.

The mandatory and explicit language of section 52 of the Constitution of Virginia is that "No law shall embrace more than one object, which shall be expressed in its title; * * * ." Yet notwithstanding that emphatic language, the title of this act really expresses no object. The vague and illusive declaration in the title that it is "An act to restrict the sale

of certain commodities; to require certain permits, * * * " and "to confer the rule making power upon the State Board of Pharmacy, * * * " and other like assertions, conveys no intelligible information to the reader. Those words and phrases constitute mere language without meaning. The title certainly fails to apprise anyone of the object, purpose, intent or subject of the legislation. At no place in the title is there found the slightest reference to the true purpose of the act. There is no mention or indication that the act has to do with prophylactics, drugs, contraceptives, venereal disease, or the use of vending machines as a means of selling any goods. Nor does the title even indicate that the act is to protect public health or morals.

The purpose of constitutional provisions such as that embodied in section 52 is to prevent the legislators and the public from being misled, and to apprise them of the subject matter of the proposed legislation.

" * * * The dominant objective of the provision is to insure the titling of legislative acts in a manner that will give reasonable notice of the purview to the members of the assembly, and to the public. * * * " 1 Sutherland: Statutory Construction, sec. 1702, p. 287.

" * * * The aim of the constitutional provision is to give information as to the subject of legislation with which the act deals, to apprise the members of the legislature, and the people, of the subject of legislation under consideration, or to challenge the attention of those affected by the act to its provisions, so that they may have an opportunity of being heard thereon if they so desire." 50 Am. Jur., Statutes, sec. 166, p. 146.

" * * * It has therefore been held that the title is sufficient if it is not productive of surprise and fraud, and is not calculated to mislead the legislature or the people, but is of such character as fairly to apprise legislators, and the public in general, of the subject matter of the legislation, and of the interests that are or may be affected thereby, and to put any-

one having an interest in the subject matter on inquiry." 50 Am. Jur., Statutes, sec. 167, p. 147.

" * * * While it may be difficult to formulate a rule by which to determine the extent to which the title of a bill must specialize its object, it may be safely assumed that the title must not only embrace the subject of proposed legislation, but also express it clearly and fully enough to give notice of the legislative purpose. * * * " 50 Am. Jur., Statutes, sec. 181, p. 161.

"While the title of a statute need not be an index to, or a synopsis of, its contents, it must set forth the subject of the statute with sufficient clearness to give notice of the legislative intent and purpose to those interested in, or affected by, the statute." 82 C. J. S., Statutes, sec. 219, p. 364.

In 1889 when construing and stating the purpose of Article V, section 15, of our then Constitution, which embodied the same language as section 52 of our present Constitution, this court said:

"As to the constitutional provision in question, it is, as we have had occasion in a recent case to declare, not only mandatory, but of great public utility. It was introduced into the constitution for a wise purpose, and ought to be reasonably interpreted and firmly enforced. One of its objects is to prevent corrupt or surreptitious legislation by incorporating into a bill obnoxious provisions of which the title gives no indication, and its requirement is that the title, while it need not be a complete index of the act, must indicate its object with sufficient distinctness *to enable the members of the legislature to fairly understand it by simply hearing the title read.* In other words, the title is not to be used as a deceptive cover for vicious legislation." *Fidelity Insurance, etc., Co., et al. v. Shenandoah Valley Railroad Co., et al.,* 86 Va. 1, 5, 9 S. E. 759.

The title now in question gives no notice to the public of the general subject dealt with, nor does it afford notice to the interests likely to be affected by the legislation. No member of the legislature could obtain the faintest idea of the

object, purpose or contents of the act by reading the title.

Our constitutional provision does not merely require that only one object be "embraced" in the law, but it also requires that the object be "expressed" in the title. That, I take it, means that the title must fairly state the subject or include provisions related to the object or purpose of the act.

" * * * It is sufficient if the title fairly expresses the subject, or is sufficiently comprehensive to include the several provisions relating to or connected with that subject." *Westgate* v. *Township of Adrian*, 161 Mich. 333, 335, 126 N. W. 422, cited with approval in *Southern Railway Co.* v. *Russell*, 133 Va. 292, 303, 112 S. E. 700.

The majority opinion asserts that "While the title is general, it is evident that the Act relates to the regulation of the sale of certain commodities." That is undoubtedly true. Yet the opinion, like the title, fails to tell me what object is *expressed* in the title, or to say how one may, by reading the title, be advised of the subject of the legislation.

"If a title totally fails to express the subject of an act, or if a title is misleading, the entire act is invalid. * * * " 1 Sutherland: Statutory Construction, sec. 1708, p. 298.

Profit might be had from perusal of the title to a quite similar act passed some years ago in Kentucky and discussed in *Markendorf* v. *Friedman*, 280 Ky. 484, 133 S. W. (2d) 516. The title is:

"An Act relating to the sale, control and licensing of the sale of appliances, drugs and mechanical preparations intended or having special utility for the prevention of venereal diseases." Kentucky Acts, 1938, C. 55, p. 387.

It may be true that the title to our act is not subject to the charge that it constitutes a cover for surreptitious legislation, for it really indicates nothing. The only thing that can be said in defense of the title is that its total lack of stated object, subject or purpose might arouse one's curiosity to read the act and thus obtain the information that the Constitution says shall be given him in the title. Yet the possibility of arousing

idle curiosity by failure to state or express the object is not compliance with the constitutional provision.

The fallacy that I find inherent in the majority opinion is that it does not recognize the distinction between what is meant by "embrace" and "expressed."

The distinction in the meaning and effect of these words as used in a similar constitutional provision is clearly set out in *Mayor, etc., of Jersey City* v. *Speer*, 78 N. J. Law 34, 42, 72 A. 448, 451, affirmed in 79 N. J. Law 598, 76 A. 1037:

" * * * The requirement as to its title is that the object of every act shall be 'expressed' therein, which is a very different matter from its being 'embraced' thereby, as has been frequently pointed out in our cases.

" 'It is not enough,' said Beasley, C.J., in *Rader* v. *Union Tp. Committee*, 39 N. J. Law, 509, 'that it [a title] embraces the legislative purpose. It must express it.' 'To confound what the title of an act expresses with what it embraces is to nullify the mandate of the Constitution.' *Griffith* v. *Trenton*, 76 N. J. Law 23, 69 A. 29.

" 'It has been thoroughly settled,' said Chancellor Magie in *State* v. *Twining*, 73 N. J. Law, 683, 64 Atl. 1073, 1135, 'by repeated decisions of our courts, including the court of last resort, that to accord with this constitutional provision the title of every act must not only include, but must also express, its object.' "

Nothing stated in this title is indicative of or germane to the object, purpose, or contents of the body of the act, and thus it fails to meet the requirements of the Constitution.