# Staunton.

SELDEN AND OTHERS V. WILLIAMS, ASSIGNEE AND OTHERS.

September 10, 1908.

Absent, Keith, P.

1. NEGOTIABLE NOTE—*Judgment—Assignment of Judgment—Rights of Assignee.*—The recovery of a judgment by the payee of a negotiable note against the maker destroys its further negotiability, and the assignee of such judgment takes it subject to all equities of the debtor against the assignor existing at the date of the assignment or arising thereafter before the debtor had notice of it.   Such assignee can take no rights which his assignor did not have, and generally can make no defense which he could not make.   This is the rule of the law though the assignment were *bona fide,* for value, and without notice of the equity.

2. ESTOPPEL—*Failure to Answer Bill—Defense to Subsequent Suit for Same Cause.*—The fact that defendants interposed no defense to a bill filed to enforce the lien of a judgment against their land does not estop them to set up defenses to a subsequent suit in equity to enforce the same judgment against other lands of the judgment debtors.

3. EQUITABLE DEFENSES UNDER SEC. 3299 OF CODE—*Failure to Make.*— If equitable defenses which are only available under sec. 3299 of the Code are not made at law they may be made in a suit in equity brought to enforce the judgment at law, provided nothing occurred in the action at law which the statute declares precludes the defendant from relief in equity.

4. ASSIGNMENTS — *Collateral — Equitable Defenses Against Assignor.*— The assignee of a chose in action assigned as collateral for a debt of less amount may recover the whole amount, but will hold the surplus as trustee for the assignor.   In an action, however, by the pledgee of a promisory note which has been pledged for a less sum than the amount of the note, the pledgee cannot deprive the maker of all equitable defences against the pledgor who is still a part owner of the note.

5. Assignments—*Pledge—Payment of Pledge—Failure of Consideration—Rights of Subsequent Assignee.*—When there has been a total failure of consideration for a negotiable note, which was pledged by the payee as collateral for a sum less than the amount of the note, and the amount for which it was pledged has been paid, and subsequently a judgment is obtained in the name of the pledgee against the maker, the equities of the maker are inherent in the note itself, and may be set up against any assignee of the pledgor or pledgee. The pledgee having received his debt was a mere nominal plaintiff and owned no beneficial interest which he could assign, and, there being a total failure of consideration, the pledgor had no beneficial or equitable interest in it. The assignee of the judgment takes it subject to the equities which prevail as to assignments of non-negotiable paper.

6. Equity—*Laches—Harmless Delay.*—A defendant will not be estopped to set up equitable defences to a judgment on the ground of laches in the absence of any evidence of injury occasioned by the delay.

Appeal from a decree of the Circuit Court of Gloucester county. Decree for the complainants. Defendants appeal.

*Reversed.*

The consent decree referred to in the dissenting opinion is in the following words and figures:

"This cause this day came on by consent of parties to be heard upon the bill and exhibits filed therewith, regularly taken for confessed as to the defendants, Charles Selden and I. H. Selden, Thomas Tabb, trustee, and Annie J. Phoebus, and the report of Commissioner Ivy filed on the 13th day of September, 1894, to which report no exceptions have been taken, and was argued by counsel.

"Upon consideration, whereof, the court doth adjudge, order and decree that the said report be, and the same is, hereby confirmed.

"The court doth further adjudge, order and decree that unless the defendants, Charles Selden and I. H. Selden, shall within thirty days from the date of this decree, pay to the plaintiff, or to Thomas Tabb, his attorney, the sum of one

thousand dollars, the same to be a credit upon the plaintiff's judgment as. reported by Commissioner Ivy, then that Thomas Tabb, as special commissioner, shall sell at public auction to the highest bidder at the auction house of P. W. Phillips, in the town of Hampton, Va., the lot of land with the buildings and improvements thereon, in the bill and proceedings mentioned and described, after twenty days' previous notice of the time, place and terms of sale, by posters at three or more public places in the county of Elizabeth City, and upon the following terms, viz.: One-third in cash and the balance in two equal payments of six and twelve months bearing interest from the day of sale, the purchaser to execute his bonds with approved security for the deferred payments. But before the said Thomas Tabb, special commissioner, shall proceed to execute this decree he shall enter into bond before the clerk of this court in the sum of five thousand dollars with sufficient security conditioned according to law.

"The court doth reserve."

This decree was endorsed:

"We consent to this decree,

> CHAS. SELDEN,
> ISABELLA H. SELDEN,
> THOMAS TABB, *Trustee,*
> THOMAS TABB, *Atty. for Annie J. Phoebus,*
> THE CITIZENS BANK OF RICHMOND,
> By THOMAS TABB, *Atty.*"

*Jones & Woodward* and *John W. Friend,* for the appellants.

*G. Carlton Jackson,* for the appellees.

Cardwell, J., delivered the opinion of the court.

On or about the 27th day of July, 1890, Charles Selden and wife executed their joint note to the Baldwin Avalon Fertilizer Company, in the sum of $1,914, payable three months after date to the order of the fertilizer company, without offset; negotiable and payable at the Citizens Bank of Richmond, Va., the note being executed under the following circumstances:

One of the makers' sons was employed by the fertilizer company, and wished to purchase 500 shares of the stock of the company; and the note was executed, upon the promise on the part of the fertilizer company that it would issue the shares of stock to the son of the makers of the note; but this the fertilizer company never did, nor have the makers of the note, or either of them, or their son, received one cent of consideration for the note.

The fertilizer company owed to the Citizens Bank the sum of $890 at that time, and put the said note in that bank as collateral security for this debt; and afterwards the fertilizer company failed and went into the hands of a receiver. The Citizens Bank instituted suit in the Circuit Court of Elizabeth City county against the makers of the note, and recovered judgment thereon at the September term, 1892, for the face value thereof, with interest and costs, but on the margin of the judgment docket of the court the following endorsement is made: "Judgment released. Thomas Tabb, p. q. As this judgment was confirmed contrary to an understanding between counsel, and as a court of equity would give relief, the same is released. Thomas Tabb, p. q."

At the March term, 1893, of the same court, the bank again recovered a judgment against the makers of said note for the sum of $1,914, with interest and costs, but to be credited by the sum of $981.22 as of the 24th day of December, 1892. No execution ever issued on either of said judgments at any time.

In 1894, the bank instituted a chancery suit for the benefit of W. S. Forbes, receiver of the fertilizer company, to recover of Selden and wife the amount due on the last named judgment, and under the proceedings in that suit the land of Selden and wife, or an interest in lands, was sold and the proceeds of the sale, after the payment of an antecedent lien and costs, were paid to Forbes, receiver, the amount realized being sixty odd dollars, Selden and wife making no defense to the suit.

In March, 1902, the bank, notwithstanding it had stated in its bill in the above mentioned chancery suit that the judgment belonged to the fertilizer company, instituted a *scire facias* proceeding for the revival of the judgment, and in that proceeding the following order was entered by the Circuit Court of the county of Elizabeth City, on May 17, 1902:

"This day came the plaintiff (the Citizens Bank), by its attorney, as well as the defendants, by their attorney, and on motion of the plaintiff, by its attorney, it is considered by the court that the plaintiff may have execution against the defendants for nineteen hundred and fourteen dollars ($1,914) with interest thereon from the 30th day of October, 1890, and eight dollars and sixty-one cents costs in the writ aforesaid specified; and also that the plaintiff recover against the said defendants its costs by it expended in suing forth and prosecuting this writ."

In the execution book in the clerk's office of Elizabeth City county is found this entry:

"CITIZENS BANK OF RICHMOND

         *vs.*

"CHARLES SELDEN AND WIFE.

"Judgment on the 17th day of May, 1902, for the plaintiff against the defendants; and to have execution on *scire facias* for the sum of nineteen hundred and fourteen dollars, with interest thereon from October 30, 1890, and $8.61 costs in the

writ (costs of old suit) and its costs in (*scire facias*) proceeding $10.70."

On May 21, 1902, the clerk of the circuit court issued an execution on this judgment, or order, as though it was a judgment *quod recuperet,* returnable to first July rules, 1902, no credit as in the original judgment being mentioned, and the execution was received by the sheriff of Elizabeth City county on June 17, 1902, but there was never any return of it. The clerk of Elizabeth City county, who went into office under the present Constitution on January 1, 1904, issued on May 17, 1904, returnable to first July rules, 1904, what he called an *alias fi fa,* upon the above mentioned order in the *scire facias* proceding, for $1,914, with interest from October 30, 1890, till paid, and $19.31 costs, no mention being made of the credit on the original judgment upon which the *scire facias* proceeding was had; and this execution was returned endorsed by the sheriff "no effects to satisfy this execution."

On the 6th day of January, 1904, the Citizens Exchange Bank of Richmond assigned, or attempted to assign, one of the above mentioned judgments to H. A. Williams, reciting that the Citizens Bank of Richmond, by an agreement made January 14, 1898, conveyed all of its assets of every kind to the Citizens Exchange Bank; and on the 26th of June, 1906, H. A. Williams filed his petition in two certain chancery causes pending in the Circuit Court of Gloucester county, to which Selden and wife were parties, and in which it was sought to subject their interest in certain property to the payment of the liens thereon, the object of Williams' petition being to enforce the lien of the judgment assigned, or attempted to be assigned, to him by the Citizens Exchange Bank.

To this petition of Williams, Charles Selden filed his answer and amended answer, which were treated as a cross-bill, to which Williams filed his demurrer and answer; and the cause was referred to a special commissioner of the court, to inquire and report (among other things), "Whether or not there are

any liens against any of the interests of the legatees under the will of R. C. Selden, and, if so, their amounts, character and priority." In response to this decree of reference, Commissioner C. A. Ashby, on January 3, 1907, filed an elaborate report, in which the ground was taken, that the judgment set up in the petition of H. A. Williams was a good and valid judgment against the defendant, Charles Selden, for $1,914, with interest at the rate of six *per cent. per annum* from the 30th day of October, 1890, and $8.61, costs of the original judgment; and $10.70 costs of the *scire facias* proceeding subject to a credit of $981.22, as of December 24, 1892, and a lien upon the property of Selden under the control of the court in the chancery cause. To sustain this finding, the commissioner submitted an argument in support of the view that the executions issued upon the order in the *scire facias* proceeding, treated by the clerks as a judgment *quod recuperet,* served to revive and to keep alive the original judgment, so as to render the pleas of the statute of limitations unavailing; giving but little consideration to the important question, whether or not Selden and wife were entitled to the benefit of the equitable defenses they sought to interpose against the judgment.

Selden and wife excepted to the commissioner's report on the following grounds:

(1) Because the plea of the statute of limitations, filed by the exceptants, was not sustained, in so far as the judgment in the petition of Williams mentioned, obtained by the Citizens Bank of Richmond against the exceptants, was concerned, and because the commissioner reported that the exceptants were precluded from making their defense by reason of laches;

(2) Because the proceedings mentioned in the report, on the *scire facias* sued out by the Citizens Bank against exceptants, stopped the running of the statute of limitations, and because the commissioner did not report that these proceedings on the *scire facias* were void, or at least voidable, and could be attacked collaterally;

(3) Because the commissioner did not hold that the assignee of the bank took the judgment in question subject to all the equities between the makers and the payee of the note upon which the judgment was originally obtained, existing at the date of the assignment of the judgment to Williams, and which arose after the assignment and before the debtor had notice thereof, and because the commissioner reported that no such equities existed;

(4) Because the commissioner reported that the judgment in question was a subsisting lien on the property of exceptants; and

(5) Because the commissioner also held that Williams was entitled to have the judgment in question paid to him.

All of these exceptions were overruled by the circuit court, and the report of Commissioner Ashby confirmed; and from the decree of the circuit court so ruling this appeal was allowed.

To this decree two errors are assigned, which present the two questions: First, Was the judgment asserted by appellee, Williams, barred by the statute of limitations when he filed his petition in said chancery causes?; and, second, Can a non-negotiable chose in action (a judgment) be assigned, and, if so, does the assignee thereof take it subject to all the equities of the debtor against the assignor, existing at the time of the assignment?

If the answer to the first question should have to be in the negative, but to the second in the affirmative, the appellants would prevail in this appeal, and, therefore, we shall take up for consideration the second question only, since, in the view we take of the case, the decree appealed from is erroneous in holding that the appellants are not entitled to the relief they set up against the judgment lien asserted against them.

"The recovery by the payee of a judgment on a note against the maker destroys its further negotiability" (7 Cyc. 524, 3 Min. Inst. 43); and therefore the judgment here in question was but a non-negotiable chose in action, which, though assign-

able, the assignee took subject to all the equities of the debtor against the assignors, existing at the date of the assignment or which arose after the assignment and before the debtor had notice of it; and this is the rule of law, though the assignee has taken the assignment for value, *bona fide* and without notice of the equity. *Pickett* v. *Norris,* 2 Wash. 255; *Feazle* v. *Dillard,* 5 Leigh 30; *Ragsdale* v. *Hazy,* 9 Gratt. (Michie's Ann.) bottom p. 203; *Stebbins* v. *Bruce,* 80 Va. 389; *Stoner* v. *Harris,* 81 Va. 451; *Etheridge* v. *Parker,* 76 Va. 247. See also Va. Code, 1904, sec. 2860.

It is also equally as well settled, that the assignee of non-negotiable obligation can take no rights which his assignor did not possess, and generally make no defense he could not make. *Stockton* v. *Cook,* 3 Munf. 69; *Meredith* v. *Salmon,* 21 Gratt. 762; Michie's Ann. 9 Gratt., *supra; Prim* v. *McIntosh,* 43 W. Va. 790, 28 S. E. 472.

As suggested by counsel for appellants, "the stream cannot rise higher than its source;" and if the Citizens Bank had no interest in the judgment after appellants had paid the debt for which their note had been deposited as collateral, which it could enforce against appellants, it certainly could not, either indirectly or directly, assign the judgment to appellee, with the right to the latter to enforce its payment by appellants. When appellee acquired, if in fact he ever acquired, title to the judgment, he acquired nothing but the actual right and title of the Citizens Bank, and took that subject to all the equities to which it was subject in the hands of the bank. Authorities *supra,* and *Cussen* v. *Brandt,* 97 Va. 1-9, 32 S. E. 791, 75 Am. St. Rep. 762.

It is well to bear in mind, in this connection, that the Citizens Exchange Bank and not the judgment creditor, the Citizens Bank, made the assignment to appellee; and there is no proof that the Citizens Exchange Bank ever owned the judgment or any interest therein, other than the recitals in its attempted assignment to appellee. Every cent that the original judgment creditor, the Citizens Bank, could demand of appel-

lants had been paid, and it had disclaimed, as above mentioned, in 1894 any further interest in the original note or judgment, declaring that thereafter the judgment belonged to the fertilizer company, and neither that company nor its receiver has ever asserted any right to or interest in the judgment since the filing of the bill in the chancery suit by the Citizens Bank, in 1894, in which the bank disclaimed any interest in the judgment. True, appellants made no defense to that chancery suit, but this fact cannot be invoked to estop them from making the defense they set up against the recovery sought in this suit. *Non constat* but they considered there were prior liens on the land sought to be subjected in the former suit which would nearly, if not altogether, consume the proceeds from the sale of the land, and the expense of employing counsel would be greater than the possible loss from not defending the suit at all. The sequel justified the course they pursued, as there was, so far as this record discloses, no decree over against them for the balance of the face value of the judgment after crediting the sixty odd dollars thereon above mentioned.

Nor does their failure to make defense to the action at law, in which the judgment in the name of the Citizens Bank was obtained against them in 1893, *supra,* or their failure to defend against the *scire facias* proceeding in 1902, preclude them from making the equitable defenses relied on in this suit. They could have made these defenses at law under section 3299 of the Code only, and that section and section 3300, left it optional in appellants whether they would or would not then make these equitable defenses; provided nothing occurred in the law actions which the statute declares precludes them from relief in equity; and it is not pretended that by the terms of the statute, as applied to what took place in either of said law actions, appellants should be considered as precluded from setting up their equitable defenses in this suit. It will be observed that the original law action was upon a past-due negotiable note held as collateral for a debt of the pledgor for a much

less amount than the face of the note, and the proof shows that appellants thought their equitable defense was being made by their attorneys. But be this as it may, appellants were not prejudiced by their defense not being then made. Va. Code, 1904, sec. 3300, *supra; Wayland* v. *Tucker,* 4 Gratt. 269, 50 Am. Dec. 76.

"Where a chose in action is assigned as collateral security, the pledgee may bring an action upon it, and recover the whole amount, even though such amount exceeds the debt secured, the rule being that the pledgee, if he realizes more than the amount of the debt secured, shall hold the surplus as trustee for the pledgor;" but in an action by the pledgee of a promisory note which has been pledged to secure a sum less than the amount for which the note was given, the pledgee cannot deprive the maker of all equitable defenses against the pledgor, who is still a part owner of the note. 22 A. & E. Ency. L., pp. 898-899.

The statements of the law just quoted are supported by authorities cited in the foot note; and in the case in judgment it is to be noted that the pledgor of the note, the fertilizer company, never had at any time the right to enforce its payment, as the consideration for which the note was given had wholly failed; so that the equities set up by appellants were inherent in the note itself. When the judgment was recovered against appellants, the plaintiff bank being a nominal plaintiff, and the amount for which the note had been held as collateral having then been paid, and the fertilizer company, the pledgor, having no beneficial or equitable interest in it, appellants were entitled to equitable relief against the balance due on the note, and therefore the pledgee, the Citizens Bank, had no beneficial or equitable interest in it to transfer to the Citizens Exchange Bank, under whose assignment appellee claims the right to enforce payment of the judgment in this suit.

That there was an absolute failure of the consideration for which the note, upon which this judgment was obtained, was

executed, is not questioned, and the rule that where the original debtor in a non-negotiable chose in action is sued by an assignee of such chose in action, the defenses, legal and equitable, which he had at the time of the assignment, or at the time when notice of it was given, against the original creditor, avail him against the substituted creditor, applies; and this rule applies to all forms of contract not negotiable, and to all defenses which would have been valid between the debtor and the original creditor. They may arise out of and be inherent in the very terms or nature of the obligation itself, as that it was conditional and the condition has not been performed by the assignor, failure or illegality of the consideration, and the like; or they may exist outside of the contract, as set-off, payment, release, the condition of accounts between the parties, and the like. It is essential, however, that the equity in favor of the debtor should exist at the time of the assignment or before notice thereof. 2 Pom. Eq. Jur. (2nd ed.), sec. 704.

The equities of appellant are manifest from what has been stated, and the essential to appellants' right to set them up here, pointed out by the learned author to whom we have just referred, is fully met, as plainly appears from the record.

Appellee, in answer to interrogatories propounded to him by appellant, Charles Selden, states that he acquired, as an investment, the judgment in question on or about January 6, 1904; that the amount, $750, paid the Citizens Exchange Bank therefor "was his own money and nobody else's;" but the fact remains that there is no proof in the record of any right in the Citizens Exchange Bank to the judgment, other than the mere recital in a copy of the assignment above mentioned, that this bank "had acquired from the Citizens Bank its assets," etc. It will be observed that the Citizens Bank had declared in 1894 that it had no interest in the judgment; that the same belonged to the fertilizer company; and that the judgment was assigned to the bank as collateral only for a debt of $890 due from the fertilizer company, which had been paid, and not for collec-

tion. If after these declarations and admissions and before the Citizens Exchange Bank is said to have acquired the assets of the Citizens Bank, the last-named bank had regained the title to the judgment or any interest therein which could pass by assignment, there is not the slightest proof in this record of that fact. The master commissioner says in his report that it was agreed that Forbes, the receiver of the fertilizer company, would testify that he did not know where the books and papers of the company were, but believed they were lost in two fires which partially destroyed the business house of the company in Richmond; and the report further states, that "in 1898, or thereabouts, the Citizens Exchange Bank of Richmond acquired the uncollected assets of the Citizens Bank of Richmond. The National Bank of Richmond then acquired the assets of the Citizens Exchange Bank and also certain assets and the books of the Citizens Bank of Richmond. The books of the Citizens Bank of Richmond, which would show the circumstances surrounding this transaction, are not now accessible to the cashier of said National Bank, and he does not know where they are."

It cannot be that the Citizens Bank, after disclaiming any interest in or right to the judgment in question, for the reason that it had been assigned to it as a collateral only for a debt of $890, which had been paid, could have assigned or attempted to assign the judgment to appellee's assignor, the Citizens Exchange Bank, and in the absence of proof of that fact it would not be presumed.

This being the case in judgment, a repetition of what was so well said by Carrington, J., in *Pickett* v. *Morris, supra,* is justified, viz.: "It would perhaps seem strange that a court of equity should not possess the power of relieving against a judgment at law, obviously unjust and against the right of the cause."

The further contention of appellee, that the appellants are estopped to make defense in this suit by reason of their "gross

laches," is wholly without merit, for there is not the faintest proof in the record that he was misled to his injury by any omission on the part of appellants to keep and perform any obligation to him, of whom they perhaps never heard until his petition was filed in this cause, June 26, 1906. On the other hand, appellee might easily have obtained information that neither the bank which attempted to assign the judgment in question nor the bank under which it claimed, had any right to or interest in the judgment to assign; but, instead of inquiry, he pays but $750 for the judgment, upon which there was then due, including interest, about $2,000, and takes the assignment "without recourse," which itself suggests doubtful right in the assignor.

We are of opinion, upon the whole case, that the decree appealed from is erroneous, and that the appellants are entitled to the relief they seek; therefore, the decree will be reversed and annulled, and this court will enter the decree the circuit court should have entered, dismissing appellee's petition in the cause, with costs to appellants.

*Reversed.*

BUCHANAN and WHITTLE, JJ., dissenting:

We are unable to concur in the conclusion reached by a majority of the court in this case.

We concede the correctness of the general proposition upon which the opinion is based, that the assignee of a judgment takes it subject to all equities of the debtor against the assignor. But in this instance the appellants are estopped from invoking that doctrine by the consent decree of September 22, 1894, pronounced by the Circuit Court of Elizabeth City county in the case of the *Citizens Bank of Richmond, Virginia* v. *the appellants, et als.;* which confirmed a commissioner's report establishing the validity of the judgment in question. The decree, moreover, directed the sale of real estate belonging to Mrs.

Selden to satisfy liens, and this judgment received its ratable share of the proceeds. A more forcible illustration of the principle of estoppel by decree could hardly be presented; and we cannot assent to the overthrow of that doctrine to relieve the hardship of the particular case.

*Reversed.*