## Wytheville

## OGLESBY COMPANY, INC. V. OULD COMPANY, INC.

### June 10, 1915.

1. EQUITY--*Jurisdiction—Matters of Account—Adequate Remedy at Law.*—Whether or not a court of equity has jurisdiction in a mere matter of account between two parties must be determined by the facts of the particular case. The usual course of the administration of justice is not lightly to be diverted from courts of law, where, as a rule, it rightly belongs, but wherever it shall clearly appear that the remedy at law is inadequate to do justice between the parties, the jurisdiction of a court of equity may be invoked.

Appeal from a decree of the Circuit Court of the city of Lynchburg. Decree for the defendant. Complainant appeals.

*Reversed.*

The opinion states the case.

*Harrison & Long,* for the appellant.

*Coleman, Easley & Coleman* and *John S. Eggleston,* for the appellee.

KEITH, P., delivered the opinion of the court.

The Oglesby Company, Inc., was for a number of years prior to May 24, 1911, engaged in business in Lynchburg as wholesale dealers in white goods, notions, etc. On that day it entered into a contract with the Ould Company, Inc., engaged in a similar business, by which the Oglesby Company sold to the Ould Company its entire stock of mer-

chandise and bills receivable, the entire stock of goods being
at invoice price, less all trade and cash discounts and a
special discount of ten *per cent.* except goods under sub-
sections A and C of clause 1 of the contract, which were
chiefly purchases for future delivery, payment of which
the defendant assumed at invoice cost, including the
freight charges thereon if the goods should be delivered,
and as to which no special discount was allowed. The con-
tract embraced also the bills due the Oglesby Company,
the solvency of which it guaranteed to the extent of $125,-
000, and also embraced the lease of the Oglesby Company's
house in which its business was conducted until January
1, 1912, at a stipulated rent, with the privileges of renewal
until July 1, 1912. The Ould Company also assumed and
undertook to carry out and perform all contracts of the
Oglesby Company for the purchase of merchandise and
for the sale of merchandise, and all contracts with its em-
ployees, including traveling salesmen, the Oglesby Com-
pany having agreed to use its good offices to induce its
salesmen and employees to enter the employment of the
defendant, and assumed the payment of all the debts and
obligations of the Oglesby Company; and the defendant, the
Ould Company, agreed to pay to the petitioner the sum
of $100,000, which it was agreed might be discharged in
second preferred stock of the defendant company to be
issued as speedily as practicable, and which should consti-
tute a lien on the real estate of the defendant described
in the contract; and it was further provided that upon a
final settlement to be had between the parties not later
than July 1, 1912, each should pay to the other whatever
amount was found to be due upon such settlement.

Upon the signing of the contract the Oglesby Company
proceeded to turn over to the defendant its house and con-
tents, and by June 1, 1911, had transferred to it all the
property provided for in the contract, and the Ould Com-

pany took possession of it and assumed control and direction of the Oglesby Company's business and its former employees, including traveling salesmen, and the former management of the Oglesby Company retired from all connection with the business. Thus upon the part of the Oglesby Company it was claimed that the contract was completely executed by the transfer and delivery of the property as therein provided, and that the Ould Company proceeded to conduct the business as its own until July 8, 1911, when it repudiated its contract and abandoned the property taken over of which it had not disposed. The bills payable (notes in bank) of the Oglesby Company, amounting to $173,000, the payment of which the Ould Company had expressly assumed, were running to maturity, and on the 27th of June, 1911, one of these, a note for $5,000, fell due and was permitted by the Ould Company to go to protest. At subsequent dates other bills and notes fell due and payment was refused. Finally on July 8, 1911, the Ould Company repudiated its contract in its entirety, and addressed the following note to the Oglesby Company:

"Gentlemen:

"Because you have broken your contract with us dated May 24, 1911, and have failed and refused to comply therewith, and your representations and guarantees of material facts as therein contained turn out to have been unfounded, we hereby notify you that we do not consider ourselves under any obligation by virtue of that contract, but on the contrary we do and shall regard and treat the contract as no longer of any binding force or effect."

To this note the Oglesby Company replied, through its president, acknowledging receipt of the letter of the Ould Company of July 8, and goes on to say: "I am availing myself of the first opportunity to ask you to specify in what way the Oglesby Company has failed or refused to comply with its contract. I ask for this information because this

is the first intimation I have had of any such complaint from you."

No reply was made to this letter, and without further notice to the Oglesby Company the Ould Company abandoned the assets, so far as it had not disposed of them, and the business taken over under the contract, though it had been in control and possession of them for more than a month, and during the whole of that time had exercised over them the authority of absolute and unconditional ownership. In the conduct of the business it had canceled orders placed by the Oglesby Company amounting to thousands of dollars. It had transferred to itself many orders taken by the Oglesby Company's salesmen; filling them with goods from its own house. It had received and shipped out goods daily, and controlled and directed the fifteen salesmen taken over under the contract, traveling in the various States of the South, and through some of them had sold and was selling goods from its own store. It had collected over $37,000 of accounts transferred to it under the contract, and applied the proceeds as it saw fit. Nevertheless, the Ould Company repudiated its contract and abandoned the remaining assets purchased thereunder, amounting to not less than $150,000 of merchandise, and $160,000 of accounts and bills receivable, leaving them without custody or direction, and the business taken over without a head and in a state of disruption and disorganization.

Being unable by negotiation to reach a satisfactory conclusion, the Oglesby Company brought a suit in chancery on the 17th day of July, 1911, against the Ould Company, and at the first rule day in August of that year filed its bill and exhibits therewith.

The contract between the parties, which was filed as an exhibit, and the averments made in the bill, of which we have given a very inadequate synopsis in the foregoing statement, disclose a situation so complicated as to our

mind to be incapable of exaggeration. The exhibits filed with the bill run through many pages and embrace well nigh innumerable items; for example, there are fourteen classifications of the stock of goods, bills and accounts receivable, that passed under the contract, beginning with invoices enumerated in class A, which were to be subject to all cash and trade discounts, and consist of thirty-five bills of goods, valued in the aggregate at many thousands of dollars. Under classification B the balance of the entire stock of merchandise is covered at invoice cost, less all trade and cash discounts, and a special discount of 10%; excepting such goods as have become unsalable, or are of uncertain value by reason of their having been carried over from the previous season, or by reason of being of undesirable styles; the same in no event to be in excess of 6% of the total gross amount of the stock. This rejected stock last referred to shall be valued by a representative of the party of the first part and a representative of the party of the second part so as to show the usual gross profit on the cost price for the following season for that class of goods; and in the event these two parties cannot agree they shall select J. F. Lee, of Roanoke, Va., or failing to get him shall select Herman Wells, of Bluefield, W. Va., whose decision shall be final. The goods enumerated under these several classifications were all subject to varying terms and conditions, and the character of the whole may be judged by the illustrations we have given. By exhibit "B," filed with the bill, is shown a list of accounts and bills receivable and the credits upon them, bills payable and bad debts, comprising more than 1,500 items, of which number it is impossible to say how many might become the subject of investigation. The prayer for relief is that the defendant be compelled to carry out its contract; that it may be required to resume possession and management of the abandoned assets, or that the assets may be placed in the

hands of a receiver to be administered under the direction of the court; that the defendant may be compelled to pay the liabilities of the plaintiff assumed by it under its contract; and that all necessary accounts may be taken and orders entered, and such other, further and general relief be granted as to equity may seem meet.

To this bill the Ould Company filed its demurrer, in which it states several grounds, but we shall only consider that which asserts that a court of equity is without jurisdiction because the complainant has a plain, adequate and complete remedy at law.

In *Tillar* v. *Cook*, 77 Va. 477, this court said: "The jurisdiction of courts of equity in matters of account is among the most comprehensive they have assumed. They have concurrent jurisdiction therein with courts of law, but the difficulty of proceeding in the latter, and the convenience of proceeding in the former, where a discovery may be had on the defendant's oath, where a multiplicity of suits will be avoided, and where fraud, accident or mistake is connected with the subject, causes them to be most commonly resorted to."

But, as we shall see in the course of further examination of the law upon this subject, the jurisdiction over matters of account does not depend upon the existence of any independent source of equity jurisdiction.

In *Penn* v. *Ingles*, 82 Va. 65, it is said, that "Equity hath jurisdiction in matters of complicated accounts, especially those involving equitable claims or trusts."

In *Beggs* v. *Edison Elec. Light, &c. Co.*, 96 Ala. 295, 11 So. Rep. 381, 38 Am. St. Rep. 94, the Supreme Court of Alabama said: "Courts of equity have for a long time exercised a general jurisdiction in cases of mutual accounts founded in privity upon the ground of the inadequacy of the remedy afforded by the common law; and this equitable interposition has been extended until equity

will now entertain suits for accounts in matters which were formerly only cognizable at law. The ancient common-law action of account being so imperfect in its processes, and so inadequate in its remedies, jurisdiction in such matters was originally given to equity, for the reason that the common law courts could not give any remedy at all, or the remedy was not as complete as that furnished by the chancery court. As courts of equity now entertain concurrent jurisdiction with the courts of law, in matters of accounts, a decision as to the proper tribunal must be governed by considerations of convenience and adequacy; and this is determined by the facts pertaining to each individual cause of action and the relief sought."

In *Ely* v. *Crane*, 37 N. J. Eq. 157, it is said: "When concurrent jurisdiction exists in matters of account, equity will not withdraw the litigation from a common law court, unless it clearly appears that such a course is necessary, in order that complete justice may be done. But it is not necessary that the case should involve an equitable element to warrant equity in assuming exclusive jurisdiction. If the accounts are so intricate or complicated, that they cannot be examined and tried at *nisi prius* with the care and deliberation necessary to insure an accurate result, equity may take jurisdiction, though an action at law was pending when the suit in equity was brought."

In *Kirby* v. *Lake Shore, &c. R. Co.*, 120 U. S. 130, 7 Sup. Ct. 430, 30 L. Ed. 569, Mr. Justice Harlan said: "The case made by the plaintiff is clearly one of which a court of equity may take cognizance. The complicated nature of the accounts between the parties constitutes itself a sufficient ground for going into equity. It would have been difficult, if not impossible, for a jury to unravel the numerous transactions involved in the settlements between the parties, and reach a satisfactory conclusion as to the amount of drawbacks to which Alexander & Co. were en-

titled on each settlement. * * * Justice could not be done except by employing the methods of investigation peculiar to courts of equity. When to these considerations is added the charge against the defendants of actual concealed fraud, the right of the plaintiff to invoke the jurisdiction of equity cannot well be doubted."

In *O'Connor* v. *Spaight*, 1 Schoales & LeFroy 305, the Lord High Chancellor of Ireland said: "The ground on which I think that this is a proper case for equity is that the account has become so complicated that a court of law would be incompetent to examine it upon a trial at *nisi prius,* with all necessary accuracy, and it could appear only from the result of the account that the rent was not due. This is a principle on which courts of equity constantly act by taking cognizance of matters, which, though cognizable at law, are yet so involved with a complex account that it cannot properly be taken at law, and until the result of the account, the justice of the case cannot appear. Matter of account may indeed be made the subject of an action, but an account of this sort is not a proper subject for this mode of proceeding: the old mode of proceeding upon the writ of account shows it; the only judgment was that the party 'should account,' and then the account was taken by the auditor; the court never went into it."

In 1 Story's Eq. Jur., at section 450, it is said: "There cannot be any real doubt that the remedy in equity in cases of account is generally more complete and adequate than it is or can be at law." And continuing the same subject in section 451 that author says: "This has accordingly been considered in modern times as the true foundation of the jurisdiction. Mr. Justice Blackstone has indeed placed it upon the sole ground of the right of courts of equity to compel a discovery. 'For want,' said he, 'of this discovery at law, the courts of equity have acquired a concurrent jurisdiction with every other court in matters of account.'

70

But this, although a strong, yet is not the sole ground of the jurisdiction. The whole machinery of courts of equity is better adapted to the purpose of an account in general, and in many cases independent of the searching power of discovery, and supposing a court of law to possess it, it would be imposible for the latter to do entire justice between the parties; for equitable rights and claims not cognizable at law are often involved in the contest."

In 2 Pomeroy's Equitable Remedies, sec. 930, it is said: "Although courts of equity have refused to entertain jurisdiction of suits for accounting in cases where the items were merely very numerous, they have interposed in many others for the sole reason that the accounts involved were extremely complicated, and even where such accounts were not mutual but were all on one side. It is important then to determine, if possible, what degree of complication will warrant the interposition of equity. The rule became established in England that equity would step in whenever the account was so complicated that a court of law would be incompetent to examine it at *nisi prius* with the necessary accuracy, but under the present practice in England, as in New York, matters of account may be referred to officers or referees, so that this rule can now hardly be followed in those jurisdictions. Various tests have been laid down, but the facts of each particular case should govern the court in the exercise of its discretion, and the true principle would seem to be that whenever it is doubtful whether adequate relief could be obtained at law, equity should entertain jurisdiction."

The synopsis which we undertook at the beginning of this opinion to give of the case made by the plaintiff in its bill and exhibits, is wholly insufficient to convey a just idea of the utter inadequacy of the remedy at law. As was said in *Beggs* v. *Edison Elec. &c. Co., supra*, where the accounts to be examined are on one side only, "the allegations of

the bill must show the existence of certain conditions which are prerequisite to the exercise of equitable jurisdiction."

In *Shepard* v. *Brown,* 4 Giffard's Rep., p. 208, the court said, that "On questions of account, courts of equity and courts of law possess concurrent jurisdiction, and the decision as to the proper tribunal must be governed by considerations of convenience."

In *Taff Vale Ry. Co.* v. *Nixon,* 1 H. L. Cas. 109, it is held, that "although the case against the company consisted of matters cognizable at law, yet as there were complicated accounts between them and the other parties respectively, a court of equity was more competent to take them, and to dispose of the whole case, than a court of law, and the bill was sustained accordingly."

*Miller* v. *Wills,* 95 Va. 337, 28 S. E. 337, was a case not of account but of trespass, and Judge Riely delivering the opinion of this court said: "Although a court of equity will not, as a general rule, interpose to prevent a mere trespass, yet if the act done or threatened would be destructive of the substance of the estate, or if repeated acts of wrong are done or threatened, or the injury is or would be irreparable—in fine, whenever the remedy at law is or would be inadequate, a court of equity will enjoin the perpetration of the wrong, and prevent the injury."

The principle which we have undertaken to illustrate is not that the court of law has not jurisdiction in such a case to afford a remedy, but that the remedy afforded at law is not as full, adequate and complete as that given in equity. The text-writers and adjudicated cases which we have examined show how wide is the scope of equity jurisdiction in such cases, and while we have found none precisely in point, all we think tend to illustrate the general proposition. Whether the authorities cited refer to mutual accounts, to long and intricate accounts, to repeated and aggravated trespass, or to the investigation of a contract embracing a

multitude of terms, all converge upon and illustrate the essential proposition that a court of equity will interpose, even in the class of cases where courts of law have concurrent jurisdiction, and without the existence of a specific ground of equity, whenever it appears that the remedy at law is less adequate than that in equity to do full and complete justice between the parties; and it, therefore, follows that each case must be determined upon its own merits. The usual course of the administration of justice is not lightly to be diverted from courts of law, where as a rule it rightfully belongs, but whenever it shall clearly appear that the remedy at law is inadequate to do justice between the parties, the jurisdiction of a court of equity may be invoked.

It is to be regretted that the bill and exhibits filed with it in this case are so voluminous as to render it undesirable to report them in full. If it were done there could be little room for doubt that the case before us is one for the exercise of equitable jurisdiction in order to do justice between the parties.

We are of opinion that the decree of the circuit court must be reversed and the cause remanded for further proceedings to be had therein.

*Reversed.*