## Staunton.

## DICKENS AND OTHERS V. RADFORD-WILLIS SOUTHERN RAILWAY COMPANY.

### September 20, 1917.

1. STATUTES—*Title—Constitutional Law—Construction of Section 52 of the Constitution.*—The purpose of section 52, Constitution of 1902, which provides that no law shall embrace more than one object, which shall be expressed in its title, was to prevent the members of the legislature and the people from being misled by the title of a law. It was intended to prevent the use of deceptive titles as a cover for vicious legislation, to prevent the practice of bringing together into one bill for corrupt purposes subjects diverse and dissimilar in their nature, and having no necessary connection with each other; and to prevent surprise or fraud in legislation by means of provisions in bills of which the titles gave no intimation. On the other hand, it was not intended to obstruct honest legislation, or to prevent the incorporation into a single act of the entire statutory law upon one general subject. It was not designed to embarrass legislation by compelling the multiplication of laws by the passage of separate acts on a single subject. Although the act or statute authorizes many things of diverse nature to be done, the title will be sufficient if the things authorized may be fairly regarded as in furtherance of the object expressed in the title. It is therefore to be liberally construed and treated, so as to uphold the law, if practicable.

2. STATUTES—*Title—Constitutional Law—Section 1103-a, Code of 1904.*—Code of 1904, section 1103-a, entitled: "Procedure by which unpaid subscriptions to joint stock companies may be recovered by said companies, their creditors, receivers, trustees, assignees, or any other person," is not unconstitutional, because the act deprives courts of equity of jurisdiction to determine the validity of such subscriptions, without making mention of such purpose in the title. The fact that a new procedure was to be provided by the act for the recovery of unpaid subscriptions necessarily implied that a change in existing

45

remedies was intended. It would be impracticable to embrace in the title to such an act the various remedies, offensive and defensive, affecting subscriptions to stock.

3. STOCK AND STOCKHOLDERS—*Unpaid Subscriptions—Procedure—Section 1103-a of the Code.*—Section 1103-a, Code of 1904, prescribing the procedure by which unpaid subscriptions to joint stock companies may be recovered by the companies, their creditors, etc., applies exclusively to suits or motions by the company and creditors (or subordinate claimants under the company) to recover unpaid subscriptions to the stock. In such proceeding, therefore, the stockholder must necessarily occupy the position of defendant; but the statute imposes no limitation upon the right of a stockholder who chooses to take the initiative (before suit or motion under section 1103-a has been instituted) to resort to any appropriate remedy for relief from liability on his subscription. If, however, he delays action until after suit or motion has been brought against him to recover his unpaid subscription, he cannot then by resort to equity, or otherwise, oust the exclusive jurisdiction acquired by the common law court under the statute. Nevertheless, the statute affords the stockholder an adequate and complete remedy, and clothes the common law court with exclusive jurisdiction to hear and determine all questions involving the validity of such subscription. This construction of section 1103-a, Code of 1904, leaves unimpaired the right of a stockholder proceeded against under that statute to avail of all defenses afforded by section 3299; yet, by implication, it qualifies section 3300 to the extent of denying to such stockholder, who has not filed a special plea of set-off, power to defeat the exclusive jurisdiction of the common law court by going into equity under that section.

4. STOCK AND STOCKHOLDERS—*Procedure to Collect Unpaid Subscriptions—Section 1103-a of the Code.*—On the trial of a motion under section 1103-a of the Code, to recover unpaid subscriptions to joint stock companies, the court on appropriate pleas, or statement in writing of grounds of defense, should submit to the jury all issues of fact involving the validity of the subscription, or other matter constituting a defense to a recovery, in order that a complete determination of the controversy may be made.

Appeal from a decree of the Corporation Court of the city of Radford. Decree for defendant. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Harless & Colhoun* and *H. C. Tyler,* for the appellants.

*Jordan & Roop* and *W. W. Goldsmith,* for the appellee.

WHITTLE, P., delivered the opinion of the court.

Appellee, the Radford-Willis Southern Railway Company, pursuant to section 1103-a of the Code, was proceeding by separate motions on the common law side of the Corporation Court of the city of Radford to recover from Dickens and other stockholders the amount of their respective subscriptions to the capital stock of the company, when appellants obtained a temporary injunction restraining the company from the prosecution of the motions at law. The bill likewise contained the prayer for cancellation and rescission of the contracts of subscription for shares of stock on the ground that they were procured by the false and fraudulent representations of the company and its officers and agents. From a decree dismissing the bill on demurrer this appeal was granted.

The statute (now section 1103-a of the Code) first appeared in the Acts of 1895-6, p. 25, and was amended, Acts 1897-8, p. 16. It is matter of local history that this legislation was the product of the "boom" of 1890, which swept over the State at that period leaving financial ruin in its trail. The legislation was distinctly intended as a relief measure to subscribers to stock in these boom corporations, which sprang up in almost every section of the State.

We shall first consider the objection raised to the constitutionality of section 1103-a on the ground of alleged insufficiency of the title under section 52 of the Constitution.

The title reads: "Procedure by which unpaid subscriptions to joint stock companies may be recovered by said companies, their creditors, receivers, trustees, assignees, or any other person." And the act is as follows:

"All suits or motions for the recovery of unpaid subscriptions to the stock of any joint stock company shall be brought in the courts of common law of this commonwealth in the county or corporation where the defendant resides, if he be a resident of this State, or in the case of a joint or partnership subscription then in the county or corporation in this State in which either of the joint subscribers or any member of the partnership subscribing shall reside; and said courts shall have exclusive jurisdiction to hear and determine all questions involving the validity of such subscriptions, but nothing herein contained shall be construed to deprive courts of chancery of their jurisdiction to settle and wind up the affairs of insolvent corporations or to make assessments on unpaid stock subscriptions.

"In all cases where it is necessary to resort to a court of equity for the purposes aforesaid the courts shall direct the trustee, assignee, or receiver, as the case may be, to sue at law when necessary to recover any call or assessment, and the defendant shall be entitled to a jury where the amount involved exceeds twenty dollars, and said suits shall be governed in all respects by the provisions of this act. All pleas, defenses, and evidence which would be admissible if the company were solvent shall be equally admissible and shall have the same effect in law in any action brought after the insolvency of any such company, except where the defense relied upon is an agreement on the part of the corporation not to assess the face value of the stock subscribed and such agreement was unknown to the creditor

at the date of his contract; and this act shall apply to all suits heretofore or hereafter brought where no final judgment or decree on the merits has been rendered: provided, that where chancery suits are pending at the time of the passage of this act, in which it is sought to recover unpaid stock subscriptions, the statute of limitations shall not run as to any alleged subscription during the time which shall have elapsed between the institution of such suit and one month after an order shall have been entered authorizing a common law action as provided in this act for the recovery of such subscription."

The objection, if we apprehend it, is not that the title does not sufficiently express the main object of the act, which is to prescribe the procedure by which the company, and other designated parties, may recover unpaid subscriptions to joint stock companies, but that the act deprives courts of equity of jurisdiction to determine the validity of such subscriptions, without making mention of such purpose in the title. This we conceive to be a misconception both of the title of the act and the design of section 52 of the Constitution.

*Commonwealth* v. *Iverson Brown,* 91 Va. 762, 21 S. E., 357, 28 L. R. A. 110, is the leading case on the subject, Riely, Judge, in delivering the opinion of the court, discussing this provision at page 771 of 91 Va., at page 360 of 21 S. E. (28 L. R. A. 110), observes: "The provision of the Constitution is a wise and wholesome one. Its purpose is apparent. It was to prevent the members of the legislature and the people from being misled by the title of a law. It was intended to prevent the use of deceptive titles as a cover for vicious legislation, to prevent the practice of bringing together into one bill for corrupt purposes subjects diverse and dissimilar in their nature, and having no necessary connection with each other, and to prevent surprise or fraud in legislation by means of provisions in bills

of which the titles gave no intimation. And, on the other hand, it was not intended to obstruct honest legislation, or to prevent the incorporation into a single act of the entire statutory law upon one general subject. It was not designed to embarrass legislation by compelling the multiplication of laws by the passage of separate acts on a single subject. Although the act or statute authorizes many things of diverse nature to be done, the title will be sufficient if the things authorized may be fairly regarded as in furtherance of the object expressed in the title. It is therefore to be liberally construed and treated, so as to uphold the law, if practicable."

This lucid exposition of the subject by Judge Riely is sustained by the highest authorities and has been uniformly followed by subsequent decisions of this court. It leaves nothing to be said in defense of the title to section 1103-a. The fact that a new procedure was to be provided by the act for the recovery of unpaid subscriptions necessarily implied that a change in existing remedies was intended. And, besides, it would be impracticable to embrace in the title to such an act the various remedies, offensive and defensive, affecting subscriptions to stock. Yet, the omission of any one of them, according to the contention of appellants, would render the act unconstitutional. Such a construction of this wise provision can hardly be expected to meet with favorable consideration.

Some confusion of thought seems to have arisen with respect to the scope of the remedy provided by section 1103-a. It applies exclusively to suits or motions by the company and creditors (or subordinate claimants under the company) to recover unpaid subscriptions to the stock. In such proceeding, therefore, the stockholder must necessarily occupy the position of defendant; but the statute imposes no limitation upon the right of a stockholder who chooses to take the initiative (before suit or motion under section

1103-a has been instituted) to resort to any appropriate remedy for relief from liability on his subscription. If, however, he delays action until after suit or motion has been brought against him to recover his unpaid subscription, he cannot then by resort to equity, or otherwise, oust the exclusive jurisdiction acquired by the common law court under the statute. Nevertheless, the statute affords the stockholder an adequate and complete remedy, and clothes the common law court with exclusive jurisdiction to hear and determine all questions involving the validity of such subscription.

The defendant is entitled to a trial by jury; and in Burks' Pleading and Practice, sec. 100, p. 174, it is said: "Defense may be made either by formal pleas, or by an informal statement in writing of the grounds of defense. In these proceedings by motion it is intended that, in so far as possible, all formalities and technicalities shall be done away with. And this policy extends to the modes of making defense, as well as to the notice of the motion. Accordingly, it is held that no *formal* pleas are *necessary,* except in cases where statutes require them, but that the defendant may make his defense by an informal statement in writing of the grounds of his defense. This statement will be treated as a plea or pleas, and the plaintiff may reply thereto with like informality. The defendant, however, *may* plead formally if he chooses, according to the course of the common law, and this is in all cases the *better practice.* But in every case an *issue* must in some way be made up on the record, in order to have a trial by jury." *Supervisors* v. *Dunn,* 27 Gratt. (68 Va.) 608; *Preston* v. *Salem Improvement Co.,* 91 Va. 583, 22 S. E. 486; *Hall* v. *Ratliff,* 93 Va. 327, 24 S. E. 1101.

The construction that we have placed upon section 1103-a leaves unimpaired the right of a stockholder proceeded against under that statute to avail of all defenses afforded

by section 3299; yet, by implication it qualifies section 3300 to the extent of denying to such stockholder, who has not filed a special plea of set-off, power to defeat the exclusive jurisdiction of the common law court by going into equity under that section. Section 3300 does not invest a litigant with additional remedies in equity, but limits his right to such resort to equity as he would have been entitled to if section 3299 had not been enacted; and he would have possessed no such right under section 3300, after a proceeding at law had been instituted against him by the company, or those claiming under it, in accordance with the provisions of section 1103-a, for the recovery of the amount due on his stock subscription. It is true that section 3299 does not give the common law court jurisdiction to cancel or rescind the contract for fraud, the scope of the section only being to grant relief by way of equitable set-off. It is also true that in the state of the law prior to the enactment of section 1103-a, common law courts were without jurisdiction to afford adequate and complete relief in the case before us. But, as we have seen, it was the purpose of the legislature, by that enactment, to revise the law in that respect and to confer upon common law courts "exclusive jurisdiction to hear and determine all questions involving the validity of such subscriptions." It would be difficult to conceive how a more adequate and complete remedy could be devised than to invest a court in a given procedure with exclusive jurisdiction to hear and *determine all questions involved.*

On the trial of such motion, the court on appropriate pleas, or statement in writing of grounds of defense, should submit to the jury all issues of fact involving the validity of the subscription, or other matter constituting a defense to a recovery, in order that a complete determination of the controversy may be made.

We are of opinion that the decree of the corporation court sustaining the demurrer and dismissing appellants' bill for want of jurisdiction was plainly right and should be affirmed.

*Affirmed.*

SIMS, J., dissenting: ·

If the statute, section 1103-a, Pollard's Code of Va., 1904, has not taken it away, courts of equity have jurisdiction to entertain a bill such as that of the appellants in the case before us, to cancel a stock subscription obtained, as alleged, by fraudulent misrepresentations. Section 3300, Pollard's Code of Va., 1904; *Rohrer* v. *Strickland,* 116 Va. 755, 82 S. E. 711; Burks' Pl. & Pr. 454; 1 Whitehurst Eq. Pr., sec. 296, p. 510; *Selden* v. *Williams,* 108 Va. 542, 62 S. E. 380; 3 Elliott on Contracts, sec. 2428; ·9 Corpus Juris, p. 1174; *Manning* v. *Berdan* (C. C.), 135 Fed. 161; *Jones* v. *Bolles,* 9 Wall. 364, 19 L. Ed. 734; *Dotson* v. *Kirk,* 180 Fed. 15, 103 C. C. A. 368; 16 Va. Law Reg. 520; *Kilbourne* v. *Sunderland,* 130 U. S. 505, 9 Sup. Ct. 594, 32 L. Ed. 1005; *Bosher* v. *Richmond, etc., Co.,* 89 Va. 455, 16 S. E. 360, 37 Am. St. Rep. 879; *Oglesby Co.* v. *Ould Co.,* 117 Va. 546, 85 S. E. 475; *Richlands Oil Co.* v. *Morris,* 108 Va. 288, 61 S. E. 762; *Jordan* v. *Annex Corp.,* 109 Va. 625, 64 S. E. 1050, 17 Ann. Cas. 267. This is conceded by the majority opinion.

To the well settled rule that "Courts of equity having once acquired jurisdiction never lose it because jurisdiction of the same matters is given to courts of law, unless the statute conferring such jurisdiction uses prohibitory or restrictive words" (8 Ency. Dig. Va. & W. Va. Rep., p. 869), there is a necessary corollary, namely, that where such a statute uses prohibitory or restrictive words, the equity jurisdiction is not taken away beyond the requirement of such words.

46

With respect to the statute, sec. 1103-a, referred to, the following may be observed:

The statute, as appears on the face of it, was enacted to limit and confine the remedy for the enforcement of stock subscription contracts to courts of law, in suits or motions to recover such unpaid subscriptions. It was enacted for the benefit of the subscribers to stock and not in any way to limit or confine their remedy for relief from liability on stock subscription contracts when such remedy theretofore existed. As was held by this court in *Mountain Lake Land Co.* v. *Blair*, 109 Va. 147, 63 S. E. 751, of said statute, "All that was intended to be accomplished by the statute, was to deprive courts of equity of * * * concurrent jurisdiction with courts of law in the enforcement of the legal rights, and to restrict the bringing of actions *upon the contract of subscription* to the law court. *Apart from this purpose of the act, it leaves courts of chancery with their jurisdiction unimpaired. Reed* v. *Gold,* 102 Va. 37, 45 S. E. 858 [868]." (Italics supplied)'.

The statute in question, therefore, is not applicable to and does not in any way affect the right of a stock subscriber to institute and maintain a bill in equity for relief from a stock subscription contract. It is concurrent with his right given by section 1103-a to insist that a suit *against* him to enforce the stock subscription contract by the company or other person named in such statute be instituted *by them* only in a common law court. That is to say (as indeed clearly appears from the language of said statute, section 1103-a, itself) such statute provides with respect to "all suits or motions for the recovery of unpaid subscriptions to the stock of any joint stock company," *initiated* by the persons named in the statute, that they shall "be brought in the courts of common law of this Commonwealth * * *" And the provision in such statute that the courts of common law "shall have exclusive juris-

diction to hear and determine all questions *involving the validity of such subscriptions.*" (Italics supplied), must be read and interpreted in the light of the sole object of the statute aforesaid, namely, "to deprive courts of equity of * * * concurrent jurisdiction with courts of law in the *enforcement* of the legal rights" (of the persons named in the statute, *against the stock subscriber*) "upon. the contract of subscription * * *". The language, "all questions involving the validity of such subscriptions" used in such statute, can, therefore, refer only to questions *arising in* suits *"brought"* or *initiated by such persons* against the stock subscriber to enforce such subscription contracts, which in turn are necessarily confined to questions of *defense* of the stock subscriber interposed to the enforcement against him of such contracts. The statute gives the stock subscriber *no right to any affirmative* relief against the company, to obtain a cancellation of the contract. It did not need to do so, since he had that remedy in equity. The statute added to this remedy in equity the right in the stock subscriber to require any proceeding *against* him to be by a suit or motion in the courts of common law. Finding such right given by statute to fall short of giving him the relief which his remedy for cancellation of the contract, existing in equity as aforesaid, would give him, the stock subscriber, in the case before us, by bringing his suit in equity, as he did, waived his right to require the plaintiff in such action to enforce the alleged contract only in a court of law, and would not be heard to complain if the court of equity should enforce such contract in the equity suit in the event he should fail to prove the fraudulent representations he alleges. The statute. section 1103-a, having reference only to suits *initiated by those seeking to enforce* stock subscription contracts and not to suits in equity *initiated by the stock subscriber,* cannot be construed to take away or limit the jurisdiction of a court of

equity in suits initiated by the stock subscriber invoking the ancient and well settled jurisdiction of equity to cancel such a contract as aforesaid. Such jurisdiction, existing as aforesaid, once taken at the instance of the stock subscriber, extends to the going on of the court to give complete relief to all parties, even to the extent of enforcing the stock subscription contract against the plaintiff, if such relief is sought by the defendant therein by appropriate pleading in accordance with the practice established in equity.

The majority opinion does not touch upon what is said in the next preceding paragraph, but it is in accord with the residue of what is said above, if the stock subscriber should institute a suit in equity to cancel the stock subscription contract *before* suit or motion under section 1103-a aforesaid, holding that in such case the last-named statute has no application. The majority opinion adds, however, that if the stock subscriber delays action until after suit or motion has been brought against him to recover his unpaid subscription, "he cannot then resort to equity, or otherwise oust the exclusive jurisdiction acquired by the common law court under the statute. Nevertheless, the statute affords the stockholder an adequate and complete remedy. * * *" I cannot concur in these conclusions.

With respect to the former conclusion: I do not perceive anything in the statute in question making it any more applicable to such a suit as aforesaid by a stock subscriber *after* than *before* suit or motion under it has been instituted to enforce the stock subscription contract. I think the true distinction is that such statute has no application at any time to a suit in equity as aforesaid by a stock subscriber; and that after suit or motion under such statute has been instituted to enforce the stock subscription contract, the stock subscriber still has his remedy

aforesaid in equity unimpaired, unless he is cut off therefrom by section 3300, Pollard's Code, 1904, by reason of his having tendered in the common law proceeding a plea which had not been there rejected, raising therein the same issue of fact which he would have to rely on in the equity suit, and issue in fact being joined in the common law proceeding on such plea and such issue being there found against him.

Said section 3300, so far as applicable, is as follows: "If a defendant, entitled to such plea as is mentioned in the preceding section, shall not tender it, or though he tender it, if it be rejected for not being offered in due time, he shall not be precluded from such relief in equity as he would have been entitled to if the preceding section had not been enacted. If, when an issue in fact is joined thereon, such issue be found against the defendant, he shall be barred of relief in equity upon the matters alleged in the plea, unless upon such ground as would entitle a party to relief against a judgment in other cases. * * *"

It is the raising by the stock subscriber of such issue in the common law proceeding and the decision of such issue against him there which alone can deprive him of his remedy in equity aforesaid; not the institution of the suit or motion against him under section 1103-a aforesaid.

Nor can I concur in the conclusion that the statute, section 1103-a, affords the stock subscriber "an adequate and complete remedy." It affords him no remedy to cancel the stock subscription contract. It, as aforesaid, does not even purport to give the stock subscriber any affirmative relief. It does not authorize the common law court to cancel the contract. Without statutory authority such court is powerless to grant such relief. This being true, it seems clear to me that such statute does not afford an adequate and complete remedy to the stock subscriber.

For the foregoing reasons I am of opinion that the decree complained of is erroneous and should be reversed, and I am, therefore, constrained to dissent from the majority opinion of the court.

*Affirmed.*